[Crim. No. 16672. Second Dist., Div. Four. Jan. 22, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
WILBUR HARLOW STUART, Defendant and Appellant.

**COUNSEL**

Harvey A. Schneider, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Norman H. Sokolow, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**JEFFERSON, Acting P. J.**—Defendant appeals from the judgment upon his conviction by the court of robbery in the first degree. The judgment contains the added finding that defendant was armed at the time of the commission of the crime. For reasons which follow, the armed finding must be stricken but the judgment is otherwise affirmed.

On January 16, 1968, Mrs. Gail Briles was working at her job behind the counter of the Venice office of the Los Angeles Department of Water and Power. At about 8:40 a.m. two men entered the office. Ths first man opened an attache case he was carrying and pulled out a gun. He ordered Mrs. Briles to open the safe. The second man, defendant, took the attache case from the first man and proceeded with Mrs. Briles to the safe. He removed the change box, containing about $50, and then removed the money from the counter cash drawer, which contained about $150. He put both the change box and the loose money into the attache case. Mrs. Briles was then ordered into the back room and the men left.

Mrs. Briles gave the police a description of the two men. A few days later two police officers came to her place of employment and one said "I would like you to look at some pictures." He gave her about a dozen photographs (People's Exhs. 3 through 13). She picked out defendant's photograph and that of Herbert Stuart, and indicated they were the robbers. At that time she did not know the men were related. (They are brothers.) They looked nothing alike. She first learned they were brothers when she came to court. On two later occasions the officers showed her photographs. On each occasion they showed her about a dozen pictures. Each time she picked out defendant's photograph. She believed the pictures she was shown on each occasion were the same. Of the 11 pictures before her in court (People's Exhs. 3 through 13), she thought she was shown all of them.

Officer Beyrouty was one of the officers who showed Mrs. Briles the photographs. After talking with her on the day of the robbery (Jan. 16th), or the following day, he brought her a mug book of photographs to look at. His partner Roy Rupe (who was deceased at the time of the trial) was with him. Mrs. Briles made no identification from the mug book. On January 29th Beyrouty came back with a pack of photographs (People's Exhs. 3 through 13). Mrs. Briles had described two male Caucasians as the

robbers and these were all photographs of male Caucasians. At this time defendant and his brother had become strong suspects in Beyrouty's mind but he did not then know the whereabouts of either of them. From the photographs of suspects accumulated by the police over the years, Beyrouty had picked out photographs having as nearly as possible the same physical characteristics as to facial features, age, hair and general build, as defendant and his brother. The photographs were in one pile and were handed to the victim. She was asked to look at them. Nothing more was said to her. Neither defendant's photograph or that of his brother was on top of the stack. Mrs. Briles picked out defendant's photograph (People's Exh. 9) and then the photograph of Herbert Stuart (People's Exh. 8). She stated they were the two robbers. On January 31st Beyrouty again showed Mrs. Briles the same pictures with an additional picture being added (not of defendant) and she again picked out the photographs of defendant and his brother.

Pursuant to stipulation, an excerpt from the testimony of the late Officer Rupe given at a section 1538.5 hearing in the case of Herbert Stuart was read into evidence. His testimony reflects that, on January 29th Mrs. Briles was shown eight photographs (Exhibits 3 through 10) including the photographs of defendant and his brother. She picked out their photographs. On January 31st he showed her the photographs again. At that time another mug shot of defendant's brother was inserted with the other (Exhibit 11). Mrs. Briles picked out the same photographs she had picked out on January 29th. On February 6th two other photographs were added (Exhibits 12 and 13). One was another more recent photograph of Herbert Stuart. She still thought the first photograph of him looked more like the man.

Mrs. Briles positively identified defendant as one of the robbers at the preliminary hearing.

The above evidence was introduced at a hearing in the trial court called to consider defendant's motion to suppress the evidence of the out-of-court identification made by the victim, and also to consider a motion to dismiss the complaint on grounds that defendant was denied a speedy trial. (The motion to dismiss will be discussed later on in this opinion.) Following the denial of the motions by the court, the case was submitted on the evidence presented at the preliminary hearing and at the hearing on the motions. Whereupon, the court made its finding as to defendant's guilt.

█ Defendant contends that the identification process under which he was identified by the victim violated his constitutional rights both because the photographic identification was impermissibly suggestive and because he was denied his right to have counsel present during such procedure. The contention lacks merit. With respect to the identification itself, the testimony of the People's witnesses (summarized above) provides ample support

for the conclusion that no improper suggestions were conveyed by the police to the victim when she was shown the photographs; that she was not in fact improperly influenced; and that the photographs themselves, which were before the court, did not in any way single defendant out. The minor variations in the testimony of the People's witnesses was a matter for the trier of fact to resolve.

■ Convictions based on eyewitness identification at trial following pretrial identification by photograph will be set aside on the ground that the pretrial identification violated the defendant's constitutional rights, only where the facts establish that ". . . the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." (*Simmons* v. *United States,* 390 U.S. 377, 384 [19 L.Ed.2d 1247, 1253, 88 S.Ct. 967]; *Rech* v. *United States* (10th Cir. 1969) 410 F.2d 1131.) The facts here demonstrate that there was no unfairness in the identification procedure.

Contrary to defendant's assertion, he was not deprived of any constitutional right because of the absence of counsel at the out-of-court photo identifications. (*Rech* v. *United States, supra,* at p. 1132; *People* v. *Short,* 269 Cal.App.2d 746, 748 [75 Cal.Rptr. 156]; *People* v. *Padgitt,* 264 Cal. App.2d 443, 449 [70 Cal.Rptr. 345].)

Defendant contends that he was denied his right to a speedy trial. As previously indicated, defendant moved to dismiss the information on such ground in the court below and his motion was denied. He asserts that this was error.

From the testimony of defendant, Officer Beyrouty, Joseph W. Chandler (a deputy district attorney), and Harvey Schneider (defendant's counsel), the following facts were adduced: On February 6, 1968, (about two weeks after the robbery) defendant was taken into custody in Chico (in northern California), and was brought to the Butte County jail. He was subsequently charged with an unrelated felony offense and was convicted of such offense on May 31, 1968. He was in continuous custody in the Butte County jail from February 6 to May 31. On the latter date he was taken to the state penal institution at Vacaville to begin serving his sentence. He thereafter learned of the hold on him by the Los Angeles County authorities with respect to the present case. He then made a written demand that he be brought to trial within 90 days pursuant to Penal Code, section 1381, which demand was received by the Los Angeles District Attorney's office on July 23, 1968. After delays occasioned in locating the file and routing the demand to the particular branch office and to the particular deputy district attorney involved, and by the preparation and processing of the court order

for defendant's return and the arranging of transportation for defendant to Los Angeles County, he arrived in Los Angeles on September 6 and was placed in the central jail. On September 8 he was arraigned and a preliminary hearing was set for September 18. On the latter date the district attorney asked for a continuance because it was discovered the alleged victim had gone to Hawaii for a vacation and would be unavailable to testify until her scheduled return early in October. Over defendant's objection a continuance was granted to October 10. On that date a preliminary hearing took place and defendant was held to answer. Defendant was arraigned in the superior court about mid-October but a trial date could not be set by October 22 (the last day of the 90-day period provided under Penal Code, section 1381). On or about that date defendant made a motion to dismiss which was granted by the court on October 29. The district attorney immediately refiled the same charge and, on October 31, defendant appeared for arraignment on the refiled charge. The preliminary hearing on the refiled charge took place on November 8 and defendant was again held to answer. He was arraigned in the superior court on November 22. At that time another motion to dismiss on speedy trial grounds was made. It was denied on December 3. Defendant then sought a writ of prohibition from the Court of Appeal which was denied and subsequently petitioned the state Supreme Court for a hearing which was also denied. The trial began on March 3, 1969.

■ Initially, it is to be observed that the delays from November 22d until the trial began were occasioned by defendant having pursued his motion to dismiss. He in effect "waived time" after that date.

■ Because defendant was not brought to trial within 90 days after receipt of his written notice to the district attorney (received on July 23, 1968) of his place of commitment and of his desire to be brought to trial, the court below (on October 29, 1968) properly dismissed the original proceeding against him. (Pen. Code, § 1381; *People* v. *Godlewski,* 22 Cal. 2d 677, 682 [140 P.2d 381]; *People* v. *Hernandez,* 250 Cal.App.2d 842, 848-849 [58 Cal.Rptr. 835].) However, a new proceeding was then undertaken against defendant on the same charge. Matters proceeded expeditiously on the refiled charge until defendant made his motion to dismiss.

■ The dismissal did not bar the further prosecution. Penal Code, section 1387 provides, "An order for the dismissal of the action . . . is a bar to any other prosecution for the same offense if it is a misdemeanor, *but not if it is a felony."* [Italics added.] While it is true that, "There may be circumstances justifying relief from an abuse of criminal process by the commencement of successive prosecutions" (*People* v. *Godlewski, supra,* 22 Cal.2d 677, 683), such circumstances are not present here. (See *People*

v. *Williams,* 71 Cal.2d 614, 622 [79 Cal.Rptr. 65, 456 P.2d 633]; *People* v. *Godlewski, supra,* at p. 683; *People* v. *Conway,* 271 Cal.App.2d 15, 21-22 [76 Cal.Rptr. 251].) As in the *Williams, Godlewski* and *Conway* cases, the delay in the present case was not an extended delay, "and therefore prejudice is not presumed. (*Barker* v. *Municipal Court,* 64 Cal.2d 806, 812-813 [51 Cal.Rptr. 921, 415 P.2d 809].)" (*People* v. *Williams, supra,* at p. 623.) The record contains no allegation of prejudice nor does it show any. ■ "In the absence of actual prejudice, defendant cannot complain that he was denied his constitutional right to a speedy trial. [Citation.]" (*People* v. *Williams, supra,* at p. 623.)

■ Defendant was convicted of first degree robbery because his accomplice was armed. There is no evidence that defendant was himself personally armed. Under such circumstances, no justification existed for the added finding that he was armed. (*People* v. *Snyder,* 276 Cal.App.2d 520, 526-527 [80 Cal.Rptr. 822].)

The judgment is modified by striking therefrom the finding "that defendant was armed as alleged." In all other respects the judgment is affirmed.

Kingsley, J., and Dunn, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 19, 1970.