[Crim. No. 31401. Second Dist., Div. One. June 26, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
JOHN MICUA NEWTON, Defendant and Appellant.

**COUNSEL**

Henry Sack, under appointment by the Court of Appeal, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Edward T. Fogel, Jr., and Richard L. Walker, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**JEFFERSON (Bernard), P. J.**—In this case before us defendant was charged with committing on February 26, 1976, the felony offense of rape in violation of Penal Code section 261, subdivision (3). It was alleged in the information that defendant had suffered two prior felony convictions: a 1967 conviction of the crime of robbery (Pen. Code, § 211) and a 1972 conviction of a violation of Health and Safety Code section 11531. Defendant entered pleas of not guilty. Several pretrial motions were made and denied: a *Ballard* motion;[1] a motion to dismiss the information pursuant to Penal Code section 995;[2] a *Wade-Gilbert* motion;[3] a *Rist* and *Beagle* motion;[4] and a motion to suppress evidence pursuant to Penal Code section 1538.5.[5]

Trial was by jury. Defendant's motion for a judgment of acquittal, made pursuant to Penal Code section 1118.1[6] was denied. The jury

---

[1]*Ballard v. Superior Court* (1966) 64 Cal.2d 159 [49 Cal.Rptr. 302, 410 P.2d 838, 18 A.L.R.3d 1416]. The *Ballard* motion is a motion for the appointment of a psychiatrist to examine the victim for the purpose of attacking her credibility by proof of an impaired capacity of perception and recollection due to a mental or emotional condition. (Evid. Code, § 780, subd. (c).)

[2]Penal Code section 995 provides, in pertinent part, that an information must be set aside if either "[t]hat before the filing thereof the defendant had not been legally committed by a magistrate" or "[t]hat the defendant had been committed without reasonable or probable cause."

[3]*United States v. Wade* (1967) 388 U.S. 218 [18 L.Ed.2d 1149, 87 S.Ct. 1926]; *Gilbert v. California* (1967) 388 U.S. 263 [18 L.Ed.2d 1178, 87 S.Ct. 1951]. The *Wade-Gilbert* motion seeks to preclude admissibility of a pretrial identification of a defendant because of being made under a constitutionally unfair identification procedure.

[4]*People v. Rist* (1976) 16 Cal.3d 211 [127 Cal.Rptr. 457, 545 P.2d 833]; *People v. Beagle* (1972) 6 Cal.3d 441 [99 Cal.Rptr. 313, 492 P.2d 1]. A *Rist* and *Beagle* motion seeks to preclude the use of felony convictions to attack the credibility of defendant or a nonparty as a witness.

[5]Penal Code section 1538.5 provides a pretrial procedure for obtaining suppression of evidence obtained through an illegal search or seizure.

[6]Penal Code section 1118.1 provides, in pertinent part, that upon motion of a defendant, or upon the court's own motion, a judgment of acquittal shall be entered if, "at the close of the evidence on either side and before the case is submitted to the jury for

found defendant guilty of rape as charged and he was sentenced to state prison. Defendant has appealed from the judgment of conviction.

In seeking a reversal of the judgment of conviction, defendant contends that the trial court erred (1) in not granting his *Rist* and *Beagle* motion to exclude his 1967 robbery conviction for use to attack his credibility as a witness; (2) in denying his motion to suppress evidence, and (3) in admitting evidence of an in-court identification of him allegedly tainted by an impermissibly suggestive pretrial photographic procedure.

In the early morning hours of February 26, 1976, the victim, Marguerite E., was raped inside a red van. She gave officers a description of the rapist and the van, including the license number of the van. It was determined that the van was registered to Leona P., who resided at 3714 Whiteside in Los Angeles. Investigation revealed that the van was parked at that address, a man (defendant) who fit the description of the suspect used the van, and Leona P. was the common law wife of defendant. Defendant was arrested inside the house. His defense was an alibi. The alibi defense was presented through the testimony of Leona. Defendant did not testify. Other pertinent evidence will be discussed in connection with defendant's assertions of errors committed by the trial court.

I

### Admissibility of a Ten-Year-Old Robbery Conviction to Impeach Defendant as a Witness

Citing *People v. Beagle* (1972) 6 Cal.3d 441 [99 Cal.Rptr. 313, 492 P.2d 1], *People v. Rist* (1976) 16 Cal.3d 211 [127 Cal.Rptr. 457, 545 P.2d 833], and *People v. Antick* (1975) 15 Cal.3d 79 [123 Cal. Rptr. 475, 539 P.2d 43], defendant contends that the trial court abused its discretion in denying his motion to preclude the prosecutor from using the *10-year-old* robbery conviction to attack defendant's credibility as a witness if he sought to testify as a witness. The rule set forth in the cited cases is to the effect that section 352 of the Evidence Code vests discretion in the trial court to exclude evidence of a prior felony

---

decision,...the evidence then before the court is insufficient to sustain a conviction of such offense or offenses [charged in the accusatory pleading] on appeal."

conviction, offered to attack the credibility of defendant as a witness, when the probative value of such evidence is substantially outweighed by the risk of undue prejudice to defendant which its admission would occasion.

The *Beagle, Antick* and *Rist* cases (and others) set forth the factors which the trial court must weigh in deciding whether a defendant's motion for exclusion of such evidence—offered for impeachment purposes—should be granted. ■ The major factors are: (1) the prior conviction's bearing on the relevant character traits to attack a witness' credibility—*untruthfulness* or *dishonesty*; (2) the remoteness or nearness in time of the felony conviction to the date of the offense for which defendant is on trial; (3) the similarity or dissimilarity between the conduct involved in the prior conviction and the conduct for which defendant is on trial; and (4) the desirability that the jury hear defendant's version of the case. This latter factor becomes of consequence because, in the case at bench, as in many cases, a defendant decides *not* to take the witness stand when his motion to exclude evidence of his prior felony conviction is denied.

■ Defendant in the case before us concedes that two of the factors were in favor of admissibility. Thus, the prior robbery conviction did have relevancy to attack his credibility as the offense of robbery involves the element of *dishonesty*, although it also involves the element of assaultive behavior—an irrelevant character trait to attack credibility. The second factor that points to admissibility is the fact that the offense of robbery (the felony conviction) is not at all similar to the offenses charged of rape and a narcotic violation (marijuana). Defendant's main argument for claiming that the trial court abused its discretion in ruling that the prior robbery conviction would be admissible is directed at the factors that a *10-year-old* felony is too remote in time to have significant probative value on credibility and that the jury should have had the benefit of his testimony in determining his guilt or innocence.

Defendant relies primarily upon *People* v. *Antick* (1975) 15 Cal.3d 79 [123 Cal.Rptr. 475, 539 P.2d 43], a burglary case, which held inadmissible for impeachment purposes two prior felony convictions of *forgery* committed by the *Antick* defendant 17 and 19 years, respectively, before the date of the burglary for which that defendant was being prosecuted. The *Antick* court recognized that the crime of forgery was certainly relevant on witness credibility because it is a crime involving

the character trait of dishonesty. But the *Antick* court reasoned that the remoteness of felony convictions suffered 17 and 19 years, respectively, prior to the date of the charged offense, detracted significantly from the value of the evidence to impeach the defendant's credibility as a witness.

The *Antick* court also dealt with the question of the effect of a defendant's conduct between the date of his remote felony conviction and the date of trial. The court rejected the argument that the *failure* of a defendant to lead a "legally blameless life" between the date of his felony conviction and the date of his trial should be considered as automatically enhancing the probative value of the felony conviction to attack credibility. The enhancement-of-credibility argument was deemed especially tenuous since the interim acts of misconduct were not related to the impeaching character traits of either dishonesty or untruthfulness. In *Antick*, the interim acts of the defendant's contacts with law-enforcement authorities were of the drug-related variety—offenses which had no bearing on the impeaching character traits of dishonesty or untruthfulness.

In addition, a factor of consequence in *Antick* in assessing the balance between prejudice to the defendant and the probative value of the evidence of a felony conviction was that of the weakness or strength of the prosecution's case. The prosecution's case against the *Antick* defendant was all circumstantial in nature and not particularly strong; this factor of the relative weakness of the prosecution's case aided in the conclusion that the probative value of a remote felony conviction of the impeaching character trait variety (an offense of dishonesty) was outweighed by the significant danger of prejudice to the defendant.

To what extent is *Antick* either persuasive or controlling in the case before us? A *10-year-old* felony is certainly not as remote as a *17-year-old* felony. But neither can a 10-year-old felony be considered to be a *recent* felony conviction. The 10-year-old felony conviction, however, is closer to the concept of a remote felony conviction than it is to that of a recent felony conviction.[7]

---

[7]The Federal Rules of Evidence deals with the remote felony conviction by a special rule. Rule 609 of the Federal Rules of Evidence provides for nonadmissibility, to attack credibility, of evidence of a conviction *more than* 10 years old "unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect. However, evidence of a conviction more than 10 years old as calculated herein, is not admissible

But there are factors present in the case at bench which distinguish it in several respects from the *Antick* case. The robbery felony suffered by defendant in 1967 is not as remote in attacking witness credibility as the *forgery* convictions involved in *Antick*. But a *robbery* conviction is not as relevant as a forgery conviction since the assaultive-behavior element of robbery has little, if any, relevance to attack credibility and this element detracts from the strength of the *dishonesty* element of robbery. The principle was set forth in *People v. Spearman* (1979) 25 Cal.3d 107, 115 [157 Cal.Rptr. 883, 599 P.2d 74], as follows: "Similarly, in *People v. Fries, supra*, 24 Cal.3d at page 229, footnote 7 [155 Cal.Rptr. 194, 594 P.2d 19], this court explained that 'only some of the elements of robbery are relevant to impeachment; the others are irrelevant. Therefore, a prior conviction of robbery is only "partly relevant to credibility."'" Even prior to *Spearman*, our high court had spoken in a similar vein. Thus, in *People v. Rollo* (1977) 20 Cal.3d 109, 118 [141 Cal.Rptr. 177, 569 P.2d 771], we find the observation: "No one denies that different felonies have different degrees of probative value on the issue of credibility. Some, such as perjury, are intimately connected with that issue; *others, such as robbery and burglary, are somewhat less relevant*; and '"Acts of violence . . . generally have little or no direct bearing on honesty and veracity."'" (Italics added.)

The People urge that defendant failed to lead a "legally blameless life" following his conviction of robbery in 1967 and that his acts were different from those mentioned in *Antick*, with the result that the probative value of the 10-year-old felony of robbery for impeachment purposes should be deemed enhanced in spite of its borderline character for remoteness. The People rely on the statement in *Antick* that the *Antick* defendant's altercations with law enforcement authorities following the felony convictions offered to impeach him as a witness involved mainly drug-related offenses and that "these problems, at most, enhance only slightly the probative value of the evidence for impeachment purposes." (*Antick, supra*, 15 Cal.3d 79, 99.) The subsequent altercations with law-enforcement authorities in the case at bench involved a failure to appear in violation of a Vehicle Code section and a conviction of possession of a sawed-off shotgun. It is the thesis of the People that these acts should be considered more serious than drug-related offenses and, hence, should be held to constitute a substantial enhancement of

---

unless the proponent gives to the adverse party sufficient advance written notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence."

the probative value, for impeachment purposes, of the 10-year-old robbery conviction. We reject this thesis. ■ We would find merit in the argument that the probative value of a felony conviction becomes enhanced for witness impeachment purposes by subsequent acts of misconduct of a defendant-witness if such subsequent acts had a substantial relevancy to establish a character trait of dishonesty or untruthfulness. It is our view that a defendant's interim acts may have substantial relevancy to establish a character trait of dishonesty or untruthfulness without amounting to felonies.

Instances of such nonfelonious acts that would have relevancy to enhance a felony conviction's relevancy for impeachment purposes would be convictions of petty theft misdemeanors—acts indicative of a character trait of dishonesty. Evidence of such interim acts following a felony conviction does not become admissible but merely serves as a factor to be used by the trial judge in weighing the probative value of the felony conviction against the danger of undue prejudice. We conclude, therefore, that the failure of defendant in the instant case to lead a "legally blameless life" following his 1967 conviction of robbery is not a factor which would point toward admissibility of the slightly remote robbery felony conviction, since defendant's interim acts of misconduct were not indicative of a character trait of either dishonesty or untruthfulness.

■ Besides the differences in the factors of the degree of remoteness and the bearing on the character traits of dishonesty or untruthfulness, there are two other matters which serve to distinguish the case at bench from *Antick*. Here, the People's case against defendant cannot be described as weak. The evidence of guilt was substantial although not overwhelming. The second matter is the question of the desirability of the jury's hearing defendant's testimony in his defense of the charge. As an element to be considered in the weighing or balancing process under Evidence Code section 352, the *Fries* and *Spearman* courts phrased the problem in terms of "the adverse effect on the administration of justice when a defendant elects not to take the stand in order to keep information about his prior felony convictions from the jury." (*People* v. *Fries* (1979) 24 Cal.3d 222, 227 [155 Cal.Rptr. 194, 594 P.2d 19]; *Spearman, supra*, 25 Cal.3d 107, 114; see also *Beagle, supra*, 6 Cal.3d 441, 453.) Here, it cannot be concluded that there was any adverse effect on the administration of justice because of defendant's election not to take the stand in order to prevent the jury from hearing about his robbery conviction. There could be no speculation about what his testimony would have been. An alibi defense was fully

presented to the jury through the testimony of Leona P. (See *People v. Anjell* (1979) 100 Cal.App.3d 189, 199 [160 Cal.Rptr. 669].)

The record establishes that the trial court, in ruling on the motion to exclude the prior robbery conviction, weighed the probative value of the evidence against the prejudicial effect of the evidence in accordance with the mandate of the decisional law embodied in *Beagle, Rist, Antick, Rollo, Fries* and *Spearman.* Defendant's motion for exclusion was carefully considered. We conclude that there was no violation of the principles set forth in these cases by the trial court's denial of defendant's motion to exclude evidence of the prior robbery conviction for purpose of impeachment.

## II

### *Defendant's Suppression-of-Evidence Motion*

In attacking the denial of his motion to suppress evidence, defendant relies upon *People v. Ramey* (1976) 16 Cal.3d 263 [127 Cal.Rptr. 629, 545 P.2d 1333], for the proposition that his warrantless arrest in his home was illegal per se since there was an absence of exigent circumstances.

Although *Ramey* does stand for the legal principle that warrantless arrests within the home are per se constitutionally illegal in the absence of exigent circumstances, *Ramey* also holds that "[I]n the absence of a bona fide emergency, *or consent to enter*, police action in seizing the individual in the home must be preceded by the judicial authorization of an arrest warrant." (*Id.* at p. 275.) In *Payton v. New York* (1980) 445 U.S. 573 [63 L.Ed.2d 639, 100 S.Ct. 1371], the United States Supreme Court announced the principle that a warrant for an arrest inside a home is constitutionally required in the absence of exigent circumstances. The court also noted that "we are dealing with entries into homes made without the consent of any occupant." (*Payton, supra,* 445 U.S. 573, 583 [63 L.Ed.2d 639, 649].)

█ The People do not assert that exigent circumstances existed to justify the warrantless arrest. They justify the arrest under the *Ramey* alternative of a consent to enter the home. The prosecution's evidence at the suppression-of-evidence hearing established that when the officers arrived at defendant's home in uniform, the red van was in the driveway. They knocked on the door and announced their presence.

Leona P. opened the door; and an officer asked her whether John Newton (defendant) was home and whether he lived there. She said that she had not seen John since four months ago in San Francisco. The officer asked whether they could come in and look around. She said: "Yes, come on in, but you are not going to find anything, I am here by myself." They entered, walked down a stairway, and saw defendant watching television in a bedroom. He matched the description of the suspect. He said his name was John Newton. The officers then placed him under arrest for forcible rape.

Citing *In re Johnny V.* (1978) 85 Cal.App.3d 120 [149 Cal.Rptr. 180], defendant argues that the consent to enter could not justify the warrantless arrest since the officers exceeded the scope of the given consent in that, assertedly, the consent was limited to an entrance to talk with defendant, and was not a consent to enter to arrest him.

The People question the propriety of permitting defendant to argue such ground on appeal—the scope of consent—since he apparently did not argue that ground in the trial court; rather, defendant predicated his trial court motion on lack of consent. (See *People v. Flores* (1968) 68 Cal.2d 563 [68 Cal.Rptr. 161, 440 P.2d 233].) We need not rest our holding on a theory of waiver since we conclude that defendant's theory that Leona P. gave only a limited consent to the officers to enter for the limited purpose of talking to the defendant is not supported by the evidence.

Although the officers did not expressly state to Leona P. that they wanted to come in the home in order to arrest defendant, they did *not* specifically request permission of Leona to enter for the purpose of talking to the defendant. Leona's words of consent—"Yes, come on in, but you are not going to find anything, I am here by myself"—are unequivocal in nature. Those words would lead the officers reasonably to believe that they had a consent to enter to find defendant for any purpose they desired, either to question him or to arrest him. We do not consider that *Ramey, In re Johnny V.* or *Payton* mandates that a consent to enter a home, in order to validate a warrantless arrest within the home, must consist of an *express* consent to the officers to enter to make an arrest. We hold that the governing principle of the scope of consent is that of the *reasonable expectation* of the officer derived from the words used and other actions on the part of the occupant giving consent.

## III

### *Admissibility of the Victim's In-court Identification of Defendant*

Defendant advances the contention that the victim's in-court identification of him was inadmissible as the product of an impermissibly suggestive pretrial photographic procedure. This argument is directed to differing facial characteristics (pockmarks, skin color) among the defendant and the other men depicted in the photographs.

A conviction based on eyewitness identification at trial following pretrial identification by photograph will be set aside on the ground that pretrial identification violated defendant's constitutional rights only where the facts establish that "'the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.'" (*People v. Stuart* (1970) 3 Cal.App.3d 817, 821 [83 Cal.Rptr. 841]; *Simmons v. United States* (1968) 390 U.S. 377, 384 [19 L.Ed.2d 1247, 1253, 88 S.Ct. 967].)

In the instant case, before the victim was shown photographs of various males which included defendant's photograph, she was presented a typed statement that she was under no obligation to identify anyone; she was not told that the rapist was depicted in any of the photographs. When shown the photographs, she immediately picked out a photograph of defendant.

From the record, it does not appear that she noticed any pockmarks on the faces depicted in the photographs until questioned in that regard by defense counsel at the trial. When questioned by counsel whether the photographs showed facial pockmarks, she testified: "No, the pockmarks don't show on Photograph 2 [depicting defendant]. I identified him from other things than his pockmarks." Then counsel told her to take a good look and she would see pockmarks. She did that, noticed pockmarks, and testified: "...but they are not outstanding.... The point is that the others have relative facial defects, too." Nor was there impermissible suggestiveness as to lightness of skin color. Contrary to defendant's assertion that only the photograph of defendant depicted a light-skinned, pockmarked face, the victim testified that two persons in the photographs were "light-complected"; and, as above indicated, she

did not notice pockmarks in the faces of any of the persons included in the photographic identification.

Defendant also complains that the victim had a "muddled picture" of the rapist as to his facial hair. Her original report of the offense omitted reference to facial hair. She testified that she was "unsure" whether he had a beard and moustache; she thought he had "some sort of facial hair," and she told that to the police artist who drew facial hair on the composite drawing at her direction.

The record indicates that the victim's report of the offense set forth a detailed physical description of the rapist and the clothes he wore, and a detailed description of the exterior and interior of the van wherein the rape occurred, including the license number of the van which was traced to defendant's common law wife, Leona P., at an address where he and Leona resided, and a description of bib overalls worn by the rapist which was identical to bib overalls found in the van following defendant's arrest. We find no error in the trial court's ruling admitting the victim's in-court identification testimony of defendant.

The judgment is affirmed.

Lillie, J., and Hanson (Thaxton), J., concurred.