[No. H001919. First Dist., Div. Two. June 7, 1988.]

THE PEOPLE, Plaintiff and Respondent, v.
CHRISTOPHER A. MULDROW, Defendant and Appellant.

**COUNSEL**

Dallas Sacher, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, and Gerald A. Engler, Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

**ROUSE, Acting P. J.**—Defendant appeals from a judgment convicting him of two counts of first degree burglary. (Pen. Code, §§ 459/460, subd. 1.) On appeal, he contends (1) that his case should be reviewed under the procedure set forth in *People* v. *Collins* (1986) 42 Cal.3d 378 [228 Cal.Rptr. 899, 722 P.2d 173], and (2) that the trial court abused its discretion by admitting his six prior convictions for crimes of moral turpitude, three of which were identical to the charged offense.

On the morning of October 21, 1985, at about 10 a.m., Meredith Daniel returned to her home at 964 Minnesota Avenue in San Jose. Daniel found pry marks on the back door and damage to the molding around the bath-

room window. Also, she noted that jewelry in a blue velvet bag, a knife, cassette recorder, credit cards and a television/radio were missing.

About the same time that Ms. Daniel discovered that her house had been burglarized, Gilbert Moreno observed a Black male in his late 30's, wearing blue Levi jeans, shirt, Levi jacket and glasses, ring the bell and knock at 721 Minnesota. Moreno watched as the man pulled open the screen door and looked through the front window. The stranger then went into the backyard for a few minutes before he returned to the front door and knocked again. Then, for the second time, he entered the backyard. When he reappeared a few minutes later, he carried a gray box.

Another neighbor, Donald Stanislaus, also observed the same Black man from his front window. Stanislaus agreed that the man carried a small metal box. Moreno also thought he had carried a portable radio. As the Black man walked away from the house, Moreno noted that he walked toward the railroad tracks.

Within a few minutes, John Takacs, the owner of the house at 721 Minnesota, drove up. Moreno told Takacs what he had seen and gave Takacs a physical description of the suspect. Takacs drove toward the railroad tracks and saw defendant, who fit the description Moreno had given him. When Takacs asked defendant to return with him to be identified, defendant voluntarily did so. Moreno agreed that the man in Takacs's car was the same man who Moreno had seen at 721 Minnesota. Takacs went into his house to get a pistol. When he returned, defendant stood a short distance away, dumping change into some bushes. Shortly thereafter the police arrived and, pursuant to a search of defendant, the officers found a knife, jewelry, rings, $30 in change, and $378 in currency. Still more change was on the ground around defendant.

After defendant was arrested, Takacs and an officer walked back to the area where Takacs had found defendant to look for the gray metal box, which had served as a cash box for a club to which Takacs belonged. They discovered the hasp from the box, as well as a checkbook and various receipts also belonging to the club. A drawer from the box was floating in a nearby creek. Additionally, during that trip and another Takacs later made, he discovered more items which had once been in the box, as well as a screwdriver, credit card, wallet and jewelry which he did not recognize, but which were later identified as belonging to Meredith Daniels.

On December 9, 1985, the District Attorney for the County of Santa Clara filed an information accusing defendant of two counts of first degree burglary committed on October 21, 1985, when Muldrow allegedly entered

the residences at 721 and 964 Minnesota Avenue, San Jose, with intent to commit theft. At defendant's arraignment, he pleaded not guilty.

A jury trial commenced on January 30, 1986. Out of the presence of the jury, defendant moved to exclude five of his six priors for impeachment. Counsel contended that a 1965 conviction for automobile theft was too remote, and that prior burglary convictions in 1972 and 1975 were not only remote, but in combination with a third burglary prior in 1978, more prejudicial than probative due to their identity with the charged offense. As to defendant's conviction for rape in 1978, he urged that it be excluded due to its inflammatory nature.[1] Counsel conceded, however, that a 1984 conviction for petty theft was a recent dishonesty-related offense which was admissible for impeachment under both *People* v. *Castro* (1985) 38 Cal.3d 301 [211 Cal.Rptr. 719, 696 P.2d 111], and *People* v. *Beagle* (1972) 6 Cal.3d 441 [99 Cal.Rptr. 313, 492 P.2d 1].

Defendant did not dispute that every prior was a crime of moral turpitude, but noted that the court must still consider the relevance of each conviction in relation to remoteness, identity and numerosity. Finally, counsel pointed out that it was not necessary to admit all six prior convictions in order to impeach defendant.

The prosecution requested that the court state the exercise of its discretion under Evidence Code section 352. The prosecution argued that the jury should know about all six of the convictions in order to allow defendant only as much credibility as was appropriate in light of having committed six crimes of moral turpitude over twenty years.

In "weighing the evidence," the court proceeded to review the date of each of defendant's prior convictions, stating that the exclusion of all priors except for the petty theft in 1984 would lead the jury to falsely believe that defendant had otherwise led a law-abiding life. As to the identical nature of the three prior burglaries to the charged offense, the court noted there was "potentially a greater prejudicial effect on the defendant's rights . . . ." The court then stated, "However, in balancing that fact against the probative value, the fact of the felony convictions that [defendant] suffered and the intervals they occurred, I find that the probative value outweighs the prejudicial effect and, therefore, pursuant to Evidence Code section 352, I find that it is permissible . . . to use each and every one of the six felony convictions the defendant has suffered to impeach him should [the People] choose to do so should [defendant] testify in the trial. And the defendant's

---

[1] Since defendant makes no argument on appeal regarding the propriety of admitting the prior conviction for rape, we do not address its admissibility.

motion is accordingly denied." The jury deliberated for 45 minutes before returning verdicts finding defendant guilty of 2 counts of first degree burglary.

## I.

■  Defendant contends that, since defense counsel objected to admission of defendant's priors for purposes of impeachment, he is entitled to appellate review in accord with the procedure set forth in *People v. Collins, supra,* 42 Cal.3d 378.[2] For reasons hereinafter set forth, we disagree.

■  In *People v. Collins, supra,* 42 Cal.3d 378, the court formulated a procedure for review of the admission of prior convictions in pre-*Castro* cases. The appellate court is to first decide whether the prior convictions are admissible or excludable, in the trial court's discretion, or inadmissible as a matter of law. If the priors are admissible, subject to the trial court's discretion, and the defendant did not testify, the court should reverse the judgment and remand the cause to allow the trial court to both exercise its discretion and determine prejudice. (*People v. Fulcher* (1987) 194 Cal.App.3d 749, 754 [236 Cal.Rptr. 845].)

In order to qualify under *Collins,* the following conditions must be met: (1) the defendant was charged with a crime committed on or after June 9, 1982, the effective date of Proposition 8, but tried before March 1985, when *Castro* was decided; (2) during the trial, the prosecution proposed to impeach the defendant with prior felony convictions if he testified; (3) the defendant moved for an order excluding those priors under Evidence Code section 352; and (4) the court denied the motion believing it had no discretion to exclude the priors due to the passage of Proposition 8. (42 Cal.3d at

---

[2] Prior to June 1982, trial courts exercised their discretion to exclude evidence if its probative value is substantially outweighed by the probability that its admission would create substantial danger of undue prejudice. (Evid. Code, § 352.)

On June 9, 1982, California voters approved Proposition 8, or article I, section 28, subdivision (f), of the California Constitution. The subdivision provides that "Any prior felony conviction of any person in any criminal proceeding . . . shall subsequently be used *without limitation* for purposes of impeachment . . . ." (See *People* v. *Boyd* (1985) 167 Cal.App.3d 36, 43 [212 Cal.Rptr. 873]; italics added.)

Not until 1985 did the California Supreme Court clarify the effect of subdivision (f) on Evidence Code section 352. In *People* v. *Castro, supra,* 38 Cal.3d 301, the court stated, "We shall hold that—always subject to the trial court's discretion under [Evid. Code] section 352—subdivision (f) authorizes the use of any felony conviction which necessarily involves moral turpitude, even if the immoral trait is one other than dishonesty." (38 Cal.3d at p. 306.)

By the time *Castro* was decided, many post-Proposition 8/pre-*Castro* trial courts had not exercised their discretion when ruling on motions to exclude prior felonies. Incorrectly believing that they were no longer allowed such discretion under subdivision (f) (*Collins, supra,* 42 Cal.3d 378, 389), such courts admitted all prior felony convictions for purposes of impeachment.

p. 389.) However, if the trial court made "a clear statement on the record that it was denying the motion in the exercise of its discretion," the presumption that the trial court felt bound by the " 'impeachment without limitation' " language of Proposition 8 is dispelled (*id.,* at p. 389, fn. 9), and the case does not qualify for review under *Collins.*

■ Defendant was charged with crimes committed in October 1985, after *Castro* was decided, thereby failing to meet *Collins's* first condition.[3] Additionally, defendant cannot meet the fourth *Collins* condition, for the court denied counsel's motion *by making a clear statement on the record* as to the exercise of its discretion: ". . . I find that the probative value outweighs the prejudicial effect and, therefore, pursuant to Evidence Code section 352, I find . . . ."

Defendant concedes this fact in his opening brief: "After hearing the argument [over the admission or denial of the priors], the trial court weighed the evidence, applying Section 352, [and] denied trial counsel's motion."

Therefore, defendant has not met all four preliminary conditions to qualify for a *Collins* review. Thus, we conclude that this case is not subject to the procedure set forth in *People v. Collins, supra,* 42 Cal.3d 378.

## II.

Defendant asserts that even if *Collins* is inapplicable, the judgment should nonetheless be reversed because the trial court abused its discretion by holding that defendant could be impeached with six prior felony convictions.

In *People v. Stewart* (1985) 171 Cal.App.3d 59 [215 Cal.Rptr. 716], the court defined judicial discretion: "[T]he absence of arbitrary determination, capricious disposition, or whimsical thinking. (*People v. Giminez* (1975) 14 Cal.3d 68, 72. . . .) The term means the exercise of discriminating judgment within the bounds of reason. To exercise judicial discretion, a court

---

[3] An exception to the strict application of the *Collins* conditions is found in *People v. Flanagan* (1986) 185 Cal.App.3d 764 [230 Cal.Rptr. 64]. Although the case was conceded by the court to be post-*Castro,* the failure of the trial record to disclose that the trial judge engaged in the requisite weighing process, i.e., that he did not make an affirmative showing, was analogous to the situation addressed in *People v. Collins, supra,* 42 Cal.3d 378. "Pursuant to the spirit of *People v. Collins*" (*People v. Flanagan, supra,* 185 Cal.App.3d at p. 773), the court therefore remanded and directed the trial court to follow the procedure set forth in *Collins* when a defendant does not testify after a denial of his motion to exclude. As shown above, we do not find that our case qualifies for such an exception because the court clearly exercised its discretion in the record.

must know and consider all material facts and all legal principles essential to an informed, intelligent, and just decision. [Citation.] [¶] . . . Moreover, the trial court's ruling under [Evid. Code] section 352 will be upset only if there is a clear showing of an abuse of discretion." (*People* v. *Stewart, supra,* at p. 65.)

■ Sections 788 and 352 of the Evidence Code control the admission of felony convictions for impeachment.[4] Together, they provide discretion to the trial judge to exclude evidence of prior felony convictions when their probative value on credibility is outweighed by the risk of undue prejudice. (*People* v. *Beagle supra,* 6 Cal.3d 441, 453.)

The trial court should consider four factors outlined in *Beagle*: (1) Whether the prior conviction reflects adversely on an individual's honesty or veracity; (2) the nearness or remoteness in time of a prior conviction; (3) whether the prior conviction is for the same or substantially similar conduct to the charged offense; and (4) what the effect will be if the defendant does not testify out of fear of being prejudiced because of impeachment by prior convictions. (*Id.,* at p. 453.) However, these factors need not be rigidly followed. (*Ibid.*)

Although *Beagle* was decided in 1972, "The *Beagle* factors 'remain relevant to any application of section 352 even after the adoption of [Proposition 8].'" (*People* v. *Dillingham* (1986) 186 Cal.App.3d 688, 695 [231 Cal.Rptr. 20].) We shall discuss the application of the *Beagle* factors to the admissibility of defendant's prior convictions.

a. *Relevance of Prior Burglary Convictions on Defendant's Credibility.*

■ Defendant contends that his prior convictions for burglary and attempted burglary are, at best, only marginally probative of his honesty, and therefore not admissible. Under the *Beagle* guidelines, convictions which rest on dishonest conduct relate to credibility. (*People* v. *Beagle, supra,* 6 Cal.3d 441, 453.) Deceit, fraud, cheating or stealing are "'universally regarded as conduct which reflects adversely on a man's honesty and integrity.'" (*Ibid.*)

Defendant cites *People* v. *Holt* (1984) 37 Cal.3d 436 [208 Cal.Rptr. 547, 690 P.2d 1207], to support his position. In *Holt,* the Supreme Court stated

---

[4] Evidence Code section 788 provides that "For the purpose of attacking the credibility of a witness, it *may* be shown by the examination of the witness or by the record of the judgment that he has been convicted of a felony . . . ." (Italics added; see *People* v. *Beagle, supra,* 6 Cal.3d 441, 451.) Evidence Code section 352 provides that the trial judge has discretion to "exclude [otherwise admissible] evidence if its probative value is substantially outweighed by the probability that its admission will . . . create substantial danger of undue prejudice . . . ."

that only a conviction which has as a necessary element an intent to deceive, defraud, lie or steal impacts on the credibility of a witness. (*Id.,* at p. 453.) The court reasoned that a conviction for burglary does not necessarily involve an intent to deceive, defraud, lie or steal, and therefore is not relevant to credibility. (*Ibid.*) Accordingly, the Supreme Court found that the trial court erred in admitting defendant's prior burglary convictions for impeachment purposes in a prosecution for first degree murder and robbery.

Defendant's reliance on *Holt,* however, is misplaced. The *Holt* court examined the adequacy of the trial court's discretion in light of the law in existence at the time of the crime, which occurred in 1979. (37 Cal.3d at p. 452.) ██ ██ Proposition 8 and *People* v. *Castro, supra,*[5] had not yet broadened the list of impeachment crimes under *Beagle* from those that reflect on honesty to include those that involve " 'moral turpitude' " (*People* v. *Boyd, supra,* 167 Cal.App.3d 36, 45)—that is, a " 'general readiness to do evil.' " (*Castro 1985, supra,* at p. 314.) Thus, when we review more recent cases which examine the status of "burglary" for the purposes of impeaching the credibility of a witness or defendant, we find *Holt* no longer controlling. *People* v. *Dillingham, supra,* 186 Cal.App.3d 688, is a recent case in point.

In *Dillingham,* the court considered whether the trial court's admission of defendant's prior convictions for burglary and attempted burglary were inadmissible as a matter of law. Applying the *Castro 1985* interpretation of Proposition 8, the court found that burglary was a " 'fundamentally deceitful act' " demonstrating a " 'readiness to do evil,' " and was no less turpid if not successfully completed. (*Id.,* at p. 695, citing *People* v. *Collins, supra,* 42 Cal.3d 378, 395.)

As indicated above, the court in *Beagle* found that "deceit" reflected directly upon honesty and integrity. Thus, burglary and attempted burglary are not only acts of moral turpitude under modern law, but, more specifically, acts of dishonesty.

Accordingly, we conclude that defendant's prior convictions for burglary and attempted burglary were properly probative of defendant's credibility.

---

[5] In section II, we have cited to *People* v. *Castro, supra,* 38 Cal.3d 301, and to *People* v. *Castro* (1986) 186 Cal.App.3d 1211 [231 Cal.Rptr. 269]. In order to avoid confusion where *supra* is used, we will include the year. Thus, the Supreme Court *Castro* decision will be referred to as "*Castro 1985,* " and the Court of Appeal *Castro* decision as "*Castro 1986.*"

b.  *Numerosity and Identity of Prior Convictions With the Current Offense.*

■    Defendant next claims that the court abused its discretion because the prejudicial effect of the number of prior convictions (six), combined with the fact that three of the priors were identical to the charged offense, outweighed any probative value.

The *Beagle* factors do not include any guidelines for evaluating the effect of the number of felonies admitted. However, both *People* v. *Dillingham, supra,* 186 Cal.App.3d 688, and *Castro 1986, supra,* 186 Cal.App.3d 1211, have held there is no limitation to the number of priors admissible for impeachment. "[W]hether or not more than one prior felony should be admitted is simply one of the factors which must be weighed against the danger of prejudice." (*Dillingham, supra,* at p. 695.)

As to the admission of identical priors, the *Beagle* court cautioned trial judges to admit them carefully. " 'A special and even more difficult problem arises when the prior conviction is for the same or substantially similar conduct for which the accused is on trial. Where multiple convictions of various kinds can be shown, strong reasons arise for excluding those which are for the same crime because of the inevitable pressure on lay jurors to believe "if he did it before he probably did so this time." As a general guide, those convictions which are for the same crime should be admitted sparingly. . . .' [¶] . . . No witness including a defendant who elects to testify in his own behalf is entitled to a false aura of veracity." (*People v. Beagle, supra,* 6 Cal.3d 441, 453.)

In *Castro 1986, supra,* 186 Cal.App.3d 1211, defendant was convicted of burglary and the unauthorized taking of a vehicle. Defendant did not testify at his trial. The trial court admitted five prior burglary convictions for impeachment purposes, incorrectly believing that Proposition 8 allowed the unlimited admission of prior convictions. The Court of Appeal reversed judgment and remanded the case to allow the trial court to exercise its discretion. Holding that the five priors were not inadmissible as a matter of law, the court found that identity is but one factor to be considered. (*Id.,* at p. 1216.) Although numerosity combined with identity increased the chances of prejudice (*id.,* at p. 1216), in an appropriately supported exercise of discretion, a court could not be precluded from finding that the probative value of the convictions outweighed the prejudicial effect. (*Ibid.*) If the defendant had chosen to take the stand, the court concluded, he would not have been entitled to a " 'false aura of veracity.' " (*Id.,* at p. 1217, citing *People* v. *Beagle, supra,* 6 Cal.3d 441, 453.)

We must ask whether, on the facts of this case, it is proper to admit six prior felonies, especially where three are identical to the charged offense. The trial court found that "in weighing the evidence," the exclusion of all priors except for the petty theft in 1984 would lead the jury to falsely believe that defendant had otherwise led a law-abiding life. In the course of making his decision, the judge reviewed the date of each prior and the number of intervening years between each conviction. As to the identical nature of the three prior burglaries to the charged offense, the court noted that there was "potentially a greater prejudicial effect on the defendant's rights," but "pursuant to Evidence Code section 352, I find it is permissible . . . to use each and every one of the six felony convictions . . . ."

On the facts of this case, an admission of any less than six prior convictions would allow the defendant a " 'false aura of veracity.' " (*Castro 1986, supra,* 186 Cal.App.3d at p. 1217.) As demonstrated in *Castro 1986,* not even the admission of *five identical prior convictions* is precluded on grounds of numerosity and/or identity where there is a supported exercise of discretion. Similarly, in this case, as to numerosity and identity, the probative value of the convictions outweighed their prejudicial effect.

c. *Remoteness of Prior Convictions.*

■ Defendant's most remote prior convictions are those for automobile theft in 1965, burglary in 1972, and attempted burglary in 1975. Defendant contends that because these priors are 10 to 20 years old, they should have been excluded by the trial court. ■ " 'The nearness or remoteness of the prior conviction is also a factor of no small importance. Even one involving fraud or stealing, for example, if it occurred long before *and has been followed by a legally blameless life,* should generally be excluded on the ground of remoteness.' " (*People* v. *Beagle, supra,* 6 Cal.3d 441, 453; italics added.)

In *People* v. *Newton* (1980) 107 Cal.App.3d 568 [166 Cal.Rptr. 60], defendant was charged with rape. His motion to preclude the use of two prior felony convictions—a 1967 conviction for robbery and a 1972 conviction for a Health and Safety Code violation—was denied, and he did not take the stand. On appeal, the defendant contended that the robbery conviction was remote in time and should not have been admitted. The Attorney General countered with evidence that the defendant had not led a "legally blameless life" after his 1967 conviction for robbery due to a violation of a Vehicle Code section and a conviction for possession of a sawed-off shotgun. The Attorney General proposed that these acts constituted a substantial enhancement of the probative value, for impeachment purposes, of the 10-year-old robbery.

The court affirmed the admission of the robbery prior but rejected the Attorney General's thesis, pointing out that defendant's interim acts of misconduct were not indicative of a character trait of either dishonesty or untruthfulness. However, the court stated, "We would find merit in the argument . . . if such subsequent acts had a substantial relevancy to establish a character trait of dishonesty or untruthfulness." (*People* v. *Newton, supra,* 107 Cal.App.3d 568, 576.)

■■■ As suggested by the *Newton* court, the systematic occurrence of defendant's priors over a 20-year period creates a pattern that is relevant to defendant's credibility. When considering the 1965 prior, the trial court stated, "I think the people are correct that if there had been no intervening offenses, that [automobile theft prior] would be too remote." The combination of the frequency of the convictions, not only from 1965 to 1975 but *throughout the 20-year period, plus their relevance to dishonesty,* give merit to the prosecution's argument that a jury would "find the defendant much less credible" knowing that he had not led a law-abiding life since his first felony conviction in 1965.

In light of countervailing factors, it was not an abuse of discretion to deny the exclusion of the first three priors on grounds of remoteness alone.

d.  *The Effect of Admission of the Prior Convictions on Defendant's Decision to Testify.*

■■■ The fourth and final factor in the *Beagle* analysis is to consider what effect admission of defendant's prior convictions will have on his decision to testify. (*People* v. *Boyd, supra,* 167 Cal.App.3d 36, 42.) Defendant contends that the admission of six prior felonies prevented him from taking the stand.

The proper evaluation of this factor depends in large part on the totality of other evidence bearing on the question of defendant's guilt in the unique circumstances of the particular case. (*People* v. *Bailes* (1982) 129 Cal.App.3d 265, 280 [180 Cal.Rptr. 792].)

In this case, the evidence was highly incriminating. There were neighbors who identified Muldrow, having seen him knock on the door, peer in the windows, and enter the backyard of one of the burglarized homes. The clothes he wore when seen by the neighbors were identified as the same clothes he wore when he was arrested. When the police searched defendant at 721 Minnesota, they found numerous items which had been or would be reported missing from either one of the burglary sites. Lastly, because the trial court had no information as to what defendant Muldrow's testimony

might be, there was no rational basis upon which the court could find that defendant's testimony was critical.

It is apparent that defendant suffered no prejudice by not testifying. Accordingly, we conclude there has been no abuse of discretion relative to the fourth *Beagle* factor.

### e. *The Cumulative Effect of the Admission of the Prior Convictions.*

In sum, we find that the probative value of defendant's priors for impeachment purposes is high: five of the convictions are directly relevant to dishonesty, while the rape is includable as an act of moral turpitude. Also, as a series of crimes over 20 years, they are more probative of Muldrow's credibility than a single offense (*People v. Stewart, supra,* 171 Cal.App.3d 59, 66), and are significant proof of defendant's failure to lead a law-abiding life after his first felony conviction in 1965. (*People v. Beagle, supra,* 6 Cal.3d 441, 453.) When considering the potential prejudice to the defendant, the law no longer requires exclusion due to the identity of three of the priors to the charged offense (*ibid.*), and there is no limit on the number of admissible prior convictions. (*Castro 1986, supra,* 186 Cal.App.3d at p. 1216.) Finally, Muldrow did not testify, but, as we have already shown, his testimony is not critical in light of the totality of the evidence. "While it is conceivable that the use of *five prior burglary convictions* to impeach a defendant in a trial for a new burglary offense could be termed 'prosecutorial overkill' and an *abuse of judicial discretion,* we must decide whether *on the facts of this case* it might be proper to admit that many priors for impeachment purposes." (*Castro 1986, supra,* at p. 1216; italics partially added.)

In examining the record before us, we cannot find a "clear showing of an abuse of discretion" (*People v. Stewart, supra,* 171 Cal.App.3d 59, 65), nor do we find that the probative value of the admission of the prior felonies was *substantially* outweighed by a danger of undue prejudice. (Evid. Code, § 352.)[6]

---

[6]However, it is conceivable that the admission of six prior felonies would be an abuse of discretion under other circumstances. Even on the strength of this record, our holding is the result of close scrutiny. Because there are no rigid standards governing the number of convictions admitted (*Castro 1986, supra,* 186 Cal.App.3d at p. 1216; *People v. Dillingham, supra,* 186 Cal.App.3d 688, 695), their remoteness (*People v. Newton, supra,* 107 Cal.App.3d 568, 576; *People v. Stewart, supra,* 171 Cal.App.3d 59, 66) or their identity to the charged offense (*id.,* at p. 66), cases such as this require the trial court to be especially careful in its exercise of discretion. Although the application of the law to isolated issues of numerosity, identity and

Inasmuch as there was no abuse of discretion, there is no need to examine the issue of prejudice.

The judgment is affirmed.

Smith, J., and Benson, J., concurred.

---

remoteness might support admission of several prior convictions, it is the cumulative effect of their admission which is most likely to result in substantial prejudice to a defendant.

While we preserve the jury's right to know whether defendant is capable of dishonesty, we must also preserve defendant's right to a fair trial. Evidence Code section 352 requires no less.