Filed 11/14/14  P. v. Hernandez CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D065946 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. Nos. RIF10003046, RIF10004526) |
| ALBERT PAUL HERNANDEZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Riverside County, Richard T. Fields, Judge.  Affirmed.

Nancy Olsen, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, William M. Wood and Amanda E. Casillas, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Albert Paul Hernandez of attempted murder (Pen. Code,[1] § 664/187, subd. (a), count 1); assault with a deadly weapon (§ 245, subd. (a)(1), count 2); active participation in a street gang (§ 186.22, subd. (a), counts 3, 5); and second degree robbery (§ 211, count 4). It found true allegations that the attempted murder was willful, deliberate and premeditated. Hernandez personally used a deadly and dangerous weapon in committing it (§§ 12022.7, subd. (a); 1192.7, subd. (c)(23)) and personally inflicted great bodily injury (§§ 12022.7, subd. (a); 1192.7, subd. (c)(8)); in committing the assault, Hernandez personally inflicted great bodily injury (§§ 12022.7, subd. (a); 1192.7, subd. (c)(8)); and in committing the robbery he personally used a deadly and dangerous weapon (§§ 12022.7, subd. (a); 1192.7, subd. (c)(23)).

The court sentenced Hernandez to state prison for an indeterminate term of life with the possibility of parole and a total determinate term of 8 years as follows: 4 years on the attempted murder conviction and its enhancements and a consecutive term of 4 years on the robbery conviction and its enhancements. The court dismissed the gang convictions in the interest of justice under section 1385.[2]

Hernandez contends: (1) under Evidence Code section 1101, subdivision (b), the court prejudicially erred by admitting evidence of his uncharged prior juvenile

---

[1]    All statutory references are to the Penal Code unless otherwise stated.

[2]    The court explained it dismissed the gang convictions because it had instructed the jury regarding the defendant directly committing the crimes but without identifying a second gang member with whom Hernandez had worked in concert. After the verdict, but before sentencing, the California Supreme Court decided *People v. Rodriguez* (2012) 55 Cal.4th 1125, holding that a gang member does not violate section 186.22 if he acts alone in committing a felony.

2

adjudication; further, such evidence was prejudicial under Evidence Code section 352; (2) his attempted murder conviction should be reversed because of prejudicial spillover from evidence regarding his gang membership presented to prove the dismissed gang convictions; and (3) there was cumulative error.  We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

*Attempted Murder Conviction*

On June 7, 2010, Harry Schlitz, Jr. was waiting at a bus stop in the City of Corona when Hernandez approached asking what Schlitz was doing there.  Schlitz sought clarification of the question by repeating it to Hernandez.  That interaction lasted approximately 10 seconds, and Schlitz did not remember what happened immediately afterwards.  One eyewitness saw Hernandez stab Schlitz.  That witness and another one testified that as Schlitz lay on the ground, Hernandez kicked him before walking away.  One of the eyewitnesses screamed at Hernandez to stop attacking Schlitz.

Schlitz was taken to the hospital, where he stayed one week.  He was unable to work for a month and a half.  Schlitz required surgery for 24 wounds he received to his skull, nose, neck, esophagus, chest and finger.  At the time of trial, his injuries still hurt.

*Robbery Conviction*

On June 12, 2010, Hernandez and two companions approached Daniel Ruiz and threateningly asked him what he carried in his pocket.  Ruiz said it was a phone, and Hernandez took it out of Ruiz's pocket without permission.  Ruiz's friend told Hernandez to return the items, and fought with Hernandez briefly.  Afterwards, Hernandez dropped

the robbed items and left, holding a knife threateningly.  Both Ruiz and his friend identified Hernandez at the curbside shortly after the incident, and again at trial.

*Hernandez's Prior Uncharged Crime*

At the start of trial, the People moved in limine to admit into evidence a detective's testimony regarding a robbery that Hernandez had committed as a juvenile in 2007.  The court summarized the facts of the juvenile adjudication:  "[It] involves [Hernandez] and two others walking . . . [Miguel Barrios] told [Hernandez] that this other person by the name of Gomez had been talking to [Barrios'] girlfriend.  Gomez approached them and said, 'What's up?'  . . . [Hernandez] asked him, 'Where are you from?'  And Gomez replied, 'From L.A.'  [Hernandez] then told him, . . . 'Fuck L.A.'  [Hernandez] then told him to empty out his pockets.  And [Gomez] then handed him his iPod.  When [Hernandez] saw the cell phone also, he asked for the cell phone.  And then Gomez . . . started running.  Miguel Barrios caught him, threw him to the ground, and [Hernandez] started punching Gomez in the back of the head."

The court had earlier ruled that certain evidence regarding Hernandez's youth was admissible.[3]  In light of that ruling, the court explained the probative value of

---

3    In admitting a photograph that identified Hernandez as a 16-year-old, the court ruled:  "I understand why the People want it excluded because it could be a tremendous appeal to sympathy to say he's 16, particularly if there's no purpose for bringing that forward.  [¶]  I actually think there is a purpose, because the jury has to determine whether this gentleman specifically, he had a specific intent, whether he premeditated and deliberated.  [¶]  . . .  I think it would be hard-pressed for us to say that age has no relevance or consideration in that at all.  Certainly I don't think we expect the same type of premeditation and intent from a 16-year-old.  It doesn't even require an expert opinion. It's just a matter of common knowledge.  You don't necessarily get the same type of

Hernandez's prior juvenile adjudication: "In this case, looking at it, it looks to me like it's very probative because the court is allowing evidence of [Hernandez's] age at the time of the offense, at the strong behest of the defense, to show that perhaps [Hernandez] didn't have the requisite specific intent or did not premeditate or deliberate. [¶] In other words, the [defense] argument is, 'look, [Hernandez is] young, he really didn't think about it that much.' But I think the evidence actually gives the People an opportunity to rebut that, to say [Hernandez] did think about it, he does think about these kinds of things, even though he may be young. Because it looks to me like when [Hernandez is ] asking 'where are you from,' it looks like he's deliberating. He's making—he's premeditating. He's making a decision what he's going to do depending upon where you're from. It looks like he's both premeditating and deliberating. If you're not where you belong, he's going to take action against you."

The court conducted a prejudice analysis under Evidence Code section 352, noting Hernandez's juvenile adjudication was far less inflammatory than the charges in this case: "I don't see any problem with confusion or undue time consumption here. It won't take that long . . . . The question of [Hernandez's] intent and whether or not he premeditated and deliberated are so critical in this case, its probative value will outweigh any prejudice attached."

careful thought from a 16-year-old than you might from someone 35 or 40 years of age. [¶] It is hard for me to imagine that his specific age has no relevance with respect to specific intent, and whether he premeditated and deliberated. I think it actually does have an impact and certainly should be considered. [¶] I am concerned about the fact the jury saying [*sic*] he's 16. Maybe some type of nullification just based on his age or inappropriate sympathy the People are afraid about. [¶] At the same time, I don't feel comfortable in any way saying it's not relevant at all."

5

Over Hernandez's objection, the court admitted the testimony on grounds it was probative regarding Hernandez's motive, intent, and deliberation. Therefore, Corona Police Department Officer Michael Nielsen testified regarding the facts of Hernandez's juvenile adjudication for robbery, which occurred when Hernandez was 13 years old. Hernandez had discussed the robbery in an interview with the Detective Nielsen. The court instructed the jury regarding the proper use of the uncharged crime testimony.[4]

Corona Police Department Officer Robert Newman testified as an expert regarding the Corona Varrio Locos criminal street gang, whose primary activities included murder, attempted murder, assault with deadly weapons, robberies, batteries, vandalism and vehicle thefts. Officer Newman identified Hernandez as a gang member based on his gang moniker, photos in which Hernandez appeared wearing the gang's bandana, postings

---

[4] Specifically, the court instructed the jury: "You may consider this evidence only if the People have proved by a preponderance of the evidence that the defendant, in fact, committed the uncharged offense. Proof by a preponderance of the evidence is a different burden of proof than proof beyond a reasonable doubt. A fact is proved by a preponderance of the evidence if you conclude that it is more likely than not that the fact is true. If the People have not met this burden, you must disregard this evidence entirely. If you decide that the defendant committed the uncharged offense, you may, but are not required to, consider that evidence for the limited purpose of deciding whether or not: the defendant acted with the intent to kill in this case; the defendant had a motive to commit the offenses alleged in this case; the defendant premeditated and deliberated the offense alleged in count 1 of this case. Do not consider this evidence for any other purpose except for the limited purpose of evaluating the expert's opinion as to whether or not defendant was an active participant in a criminal street gang as alleged in counts 3 and 5. Do not conclude from this evidence that the defendant has a bad character or is disposed to commit crime. If you conclude that the defendant committed the uncharged offense, that conclusion is only one factor to consider along with all the other evidence. It is not sufficient by itself to prove that the defendant is guilty of any of the crimes or allegations charged in this case. The People must still prove each charge and allegation beyond a reasonable doubt."

6

and photographs on Hernandez's social website, letters found at his house, and interviews between police and Hernandez between 2007 and 2010. Officer Newman testified that in the 2007 incident, Hernandez asked the victim, "Where are you from?" That question was significant because "there was a disrespect issue that these three gang members now had to bring back some of that respect they thought they had lost by an outsider talking to one of their girlfriends."

DISCUSSION

I.

Conceding he stabbed Schlitz, Hernandez contends the trial court prejudicially erred by admitting evidence of his prior juvenile adjudication under Evidence Code section 1101, subdivision (b) to show motive, intent to kill, premeditation and deliberation.[5]

"Evidence of uncharged crimes is admissible to prove identity, common design or plan, or intent only if the charged and uncharged crimes are sufficiently similar to support a rational inference of identity, common design or plan, or intent." (*People v. Carter* (2005) 36 Cal.4th 1114, 1147.) Admissibility depends on the materiality to the current offense of the fact sought to be proved, the tendency of the uncharged act to prove the

_____

5    At the outset of closing argument, defense counsel told the jury: "What I'm about to tell you may shock some of you. You may not hear this from defense attorneys. Mr. Hernandez is, in fact, guilty. He is guilty of assault with a deadly weapon. He was present. He did, in fact stab Mr. Schlitz. That's been proven to you beyond a reasonable doubt." Defense counsel continued: "But now your job gets a little more difficult. It's whether or not he had the intent to kill. That's what you must decide. Whether or not it's been proven to you."

7

material fact, and whether there is any other rule requiring exclusion of the uncharged act. (*People v. Walker* (2006) 139 Cal.App.4th 782, 796.)

The least degree of similarity between the uncharged act and the charged offense is required in order to prove intent. (*People v. Ewoldt* (1994) 7 Cal.4th 380, 402.) The recurrence of similar results tends "to negative accident or inadvertence or self-defense or good faith or other innocent mental state, and tends to establish (provisionally, at least, though not certainly) the presence of the normal, i.e., criminal, intent accompanying such an act." (*Ibid*.) In order to be admissible to prove intent, the uncharged misconduct must be sufficiently similar to support the inference that the defendant " ' "probably harbor[ed] the same intent in each instance." ' " (*Ibid.*)

"In addition to its relevance to an issue other than predisposition or propensity, to be admissible under [Evidence Code] section 1101, subdivision (b), the probative value of the evidence of uncharged crimes 'must be substantial and must not be largely outweighed by the probability that its admission would create a serious danger of undue prejudice, of confusing the issues, or of misleading the jury.' " (*People v. Walker*, *supra*, 139 Cal.App.4th at p. 796, quoting *People v. Kipp* (1998) 18 Cal.4th 349, 371.)

Evidence Code section 352 states in part that the court may exclude evidence if its probative value is substantially outweighed by the probability its admission will create substantial danger of undue prejudice. Prejudice is inherent whenever other crimes evidence is admitted. (*People v. Carter*, *supra*, 36 Cal.4th at p. 1150, citing *People v. Ewoldt*, *supra*, 7 Cal.4th at p. 404.) However, *undue prejudice* exists when the evidence " 'uniquely tends to evoke an emotional bias against a party as an individual, while

8

having only slight probative value with regard to the issues.' " (*People v. Robinson* (2005) 37 Cal.4th 592, 632, quoting *People v. Crittenden* (1994) 9 Cal.4th 83, 134.)

"The weighing process under [Evidence Code] section 352 depends upon the trial court's consideration of the unique facts and issues of each case, rather than upon the mechanical application of automatic rules." (*People v. Jennings* (2000) 81 Cal.App.4th 1301, 1314.) On appeal, a trial court's resolution of these issues is reviewed for abuse of discretion. (*People v. Carter*, *supra*, 36 Cal.4th at p. 1149.) It will not be disturbed on appeal unless " 'the prejudicial effect of the evidence clearly outweighed its probative value.' " (*Jennings*, at pp. 1314-1315, citing *People v. Brown* (1993) 17 Cal.App.4th 1389, 1396.) In the absence of a showing of such an abuse, we must affirm the lower court's ruling. (*People v. Rodriguez* (1999) 20 Cal.4th 1, 9-10.)

Here, the court did not abuse its discretion in admitting testimony regarding Hernandez's juvenile adjudication because Hernandez acted similarly in both instances. In the juvenile case, Hernandez first asked where his victim was from, and upon hearing he was from Los Angeles, Hernandez immediately expressed his disdain and proceeded to rob him. Likewise, here, Hernandez first asked Schlitz what he was doing at the bus stop. Upon not receiving a satisfactory response, Hernandez promptly stabbed Schlitz. In both instances Hernandez carried out his intent to harm persons who were strangers to him, who had not provoked him, and who did not answer his question to his satisfaction.

In any event, any prejudicial effect of this evidence was negligible because the prior offense was far less serious than the charged offense, did not involve violence, and was not likely to inflame the jury. In addition, the jury was instructed to use the evidence

9

for the limited purpose of deciding whether Hernandez was the person who committed the offenses. There is no reason to question the normal presumption that the jury understood and followed that instruction. (*People v. Wilson* (2008) 44 Cal.4th 758, 803.)

We also note that there was abundant independent testimony to support the attempted murder conviction. As Hernandez conceded at trial, identity was not an issue in this case; therefore the critical question was his intent. The jury reasonably could have inferred his intent to attempt to murder Schlitz from the fact that without provocation he stabbed Schlitz 24 times in vulnerable parts of the body, kicked him, and left him injured and bleeding on the ground. It is not reasonably probable Hernandez would have obtained a different verdict absent the testimony regarding his juvenile adjudication.

To the extent Hernandez claims the court's evidentiary ruling violated his due process rights, we disagree. The evidence was properly admitted under Evidence Code section 1101, subdivision (b) and there is no basis for the contention that admission of the evidence violated defendant's due process rights and rendered his trial fundamentally unfair. (*People v. Rogers* (2013) 57 Cal.4th 296, 331 [no due process violations when evidence was material, probative, and properly admitted].)

## II.

Hernandez contends his attempted murder conviction should be reversed because of prejudicial spillover from evidence presented to prove the dismissed convictions regarding his gang membership.

In light of the charges of gang participation, the evidence of gang membership was relevant to, and admissible regarding, those charged offenses. Evidence of a defendant's

gang affiliation—including evidence of the gang's territory, membership, signs, symbols, beliefs and practices, criminal enterprises, rivalries, and the like—can help prove identity, motive, modus operandi, specific intent, means of applying force or fear, or other issues pertinent to guilt of the charged crime. (*People v. Hernandez* (2004) 33 Cal.4th 1040, 1048.) Here, the fact the court dismissed the gang charges does not mean Hernandez was prejudiced by the introduction of the gang testimony. As noted, overwhelming independent evidence supported the jury's verdict regarding Hernandez's intent in committing the attempted murder.

III.

We reject Hernandez's contention of cumulative error. In a close case, the cumulative effect of multiple errors may be sufficient to cause the trial to have been unfair and hence cause a miscarriage of justice. (*People v. Buffum* (1953) 40 Cal.2d 709, 726, overruled on other grounds by *People v. Morante* (1999) 20 Cal.4th 403, 415.) Multiple errors may require reversal even when the errors, considered individually, would not warrant the same conclusion. (*People v. Jackson* (1991) 235 Cal.App.3d 1670, 1681.) If, in the absence of the cumulative errors, it is reasonably probable that the jury would have reached a result more favorable to a defendant, the decision must be reversed. (*People v. Holt* (1984) 37 Cal.3d 436, 459, superseded by statute on another ground as stated in *People v Muldrow* (1988) 202 Cal.App.3d 636, 645.) These principles do not apply as we have found no error.

11

DISPOSITION

The judgment is affirmed.


O'ROURKE, J.

WE CONCUR:

McINTYRE, Acting P. J.

IRION, J.