Filed 4/1/16  P. v. Pannighetti CA3

## NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>WESLEY PANNIGHETTI,<br><br>Defendant and Appellant. | C079098<br><br>(Super. Ct. No. 14F07183) |

A jury convicted defendant Wesley Pannighetti of assault with force likely to produce great bodily injury (count one) and assault with a deadly weapon (count two). In bifurcated proceedings the trial court found a prior conviction allegation true and sentenced defendant to 14 years in state prison.

Defendant now contends the trial court abused its discretion by (1) allowing his credibility to be impeached with prior 1980 misdemeanor convictions for battery upon a police officer and domestic violence; and (2) allowing admission of the details of his 1995 conviction for assault with a deadly weapon.  Finding no abuse of discretion, we will affirm the judgment.

1

BACKGROUND

Defendant lived in Sacramento in October 2014 with Sean Kurzawa, Donald Robyn and several others. On the morning of October 11, defendant drank beer and hard liquor and also smoked marijuana with Sean. Sean and Donald were watching a movie in the living room. They believed defendant was intoxicated because he was slurring his speech and staggering as he walked. When Donald commented to defendant about being drunk in the morning, defendant began yelling at Donald about unpaid bills and the risk of the house going into foreclosure. Defendant got louder and increasingly aggressive, calling Donald and Sean freeloaders.

A couple of hours later, Donald heard defendant yelling from the backyard. Defendant came back into the house and continued to yell about unpaid expenses. Donald told defendant to calm down, and as defendant got more aggressive, Donald told him to shut up. Defendant answered, "a baseball bat will shut your mouth" and walked out of the room. Defendant immediately returned to the room and hit Donald on the head with a spray bottle. He threw the bottle down and approached Donald with his fists raised. Donald blocked defendant's punches, shoved him away, and defendant fell to the ground. Defendant got up and threatened to kill Donald, rip off his head and gouge his eyes out. Sean and Donald went back to watching movies. The yelling and screaming stopped and Donald thought defendant had passed out.

A few hours later, Donald and Sean were still watching movies and defendant came back into the room. He whispered to Donald that he needed to tell him something, stabbed Donald in the neck with a five- to seven-inch knife and then screamed, "I'm going to cut your throat, you don't ever attack me." Blood was flowing down Donald's chest and stomach, and defendant kept yelling "I'm going to kill you. You don't fucking touch me."

Sean grabbed defendant and defendant swung the knife at him. Donald clutched his throat and ran out into the backyard. Defendant chased Donald around the pool,

2

yelling "I'm going to kill you" and "I'll cut your eyes out." Donald continued to hold his neck to control the bleeding.

Sean told defendant he was calling 911. Defendant waved the knife at Sean and called him a "fucking cop caller." Sean told the 911 operator that "we just had a guy pull a knife on another guy, sliced him in the neck. I can't tell how bad it is. He's chasing them around the backyard at this very moment." Sean identified defendant as "the provoker." A neighbor also heard the commotion and phoned the police.

Defendant chased Donald in the backyard until he heard the police sirens, then fled the scene in his truck. A responding officer pulled the truck over and arrested defendant. Defendant had blood on his shirt and showed signs of intoxication. He was agitated, talkative and sweaty. His pupils were dilated and bloodshot.

The deputies did not find the knife in the house. Donald was taken to the hospital. The next day, Donald found what he believed was the knife in defendant's dirty laundry.

Donald admitted having past confrontations with defendant's son, Phillip Hansen, in which Phillip sustained bruises. He was also involved in wrestling matches with Sean and verbal confrontations with defendant in the past.

Phillip testified he had known Donald for 20 years and they had lived together for four years. He had known defendant for three years, when he learned defendant was his biological father. Over the years, Phillip and Donald had numerous physical fights, including as recently as 2014. They fought at least once a month in 2014. Phillip sustained bruises all over his body and a black eye as a result of those fights. Phillip also saw Donald fight with other people. Donald regularly broke things like tables and chairs and threw things around the house. Phillip opined that Donald had a character for violence.

Phillip's brother, Jacob, had known Donald for 20 years and lived with him in 2011. In Jacob's opinion, Donald had a violent character and it was unsafe to live with him. Jacob recalled a time in November 2011 when Donald was arguing with his

3

girlfriend and Jacob accidentally closed a door on Donald's hand. Donald punched Jacob in the face. Another time, in February 2012, Donald slammed a chair into the ceiling and then smashed the chair against the floor.

Defendant admitted drinking alcohol and smoking marijuana on the morning of October 11, 2014. He also admitted being angry with Donald and Sean. But he denied hitting Donald with the cleaning bottle. Defendant claimed Donald knocked the bottle out of his hand, threatened him, and punched him. Later in the day, defendant and Donald again argued. Donald threatened that "a baseball bat to the mouth would shut you up, mother fucker." Defendant responded by calling Donald a freeloader and Donald attacked, punching him in the chest. Donald then refused to fight and they talked and hugged. Later, however, Donald and defendant began arguing again. Defendant threatened to have Donald evicted, Donald hit defendant on the side of the head, and defendant blacked out. When defendant regained consciousness he was leaning over Donald holding a knife; Donald was screaming for help. Defendant could not remember grabbing the knife or stabbing Donald. He tried to get away from Donald and only pointed the knife at Sean because Sean tried to attack him. Defendant denied chasing Donald into the backyard and denied intending to harm him.

Defendant acknowledged he had a number of prior convictions, including: (1) felony false imprisonment in 2003; (2) felony assault with a deadly weapon in 1995, with enhancements for using a knife and causing great bodily injury; (3) misdemeanor battery causing serious bodily injury in 1992; (4) misdemeanor battery on a peace officer in 1980; and (5) misdemeanor domestic violence in 1980.

In rebuttal, three former Roseville police officers testified as to the details of defendant's 1995 conviction for assault with a deadly weapon, in which defendant stabbed James Berg multiple times. Berg sustained stab wound injuries on his lower back, right eye, right ear, right leg, left hand, chin, and mouth. When police officers

4

arrested defendant he was covered in blood, agitated and aggressive. He refused to obey officer's commands and tried to kick the windows out of the patrol car.

The jury found defendant guilty of assault with force likely to produce great bodily injury against Donald (Pen. Code, § 245, subd. (a)(4) -- count one) and assault with a deadly weapon against Donald (Pen. Code, § 245, subd. (a)(1) -- count two). The jury also found true an enhancement allegation that defendant personally used a deadly or dangerous weapon. (Pen. Code, § 12022, subd. (b).) The jury found defendant not guilty of assault with a deadly weapon against Sean (Pen. Code, § 245, subd. (a)(1) -- count three). In bifurcated proceedings, the trial court found true an allegation that defendant had a prior conviction that qualified as a serious felony (Pen. Code, § 667, subd. (a)) and a prior strike (Pen. Code, §§ 667, subds. (b)-(i), 1170.12).

The trial court sentenced defendant to an aggregate term of 14 years in state prison, consisting of the following: eight years on count one (the upper-term of four years doubled for the prior strike) plus an additional year for the weapon enhancement and five years for the prior serious felony. The trial court stayed sentence on count two.

Additional facts are set forth in the discussion as relevant to the contentions on appeal.

DISCUSSION

I

Defendant contends the trial court abused its discretion by allowing his credibility to be impeached with prior 1980 misdemeanor convictions for battery upon a police officer and domestic violence.

A

The prosecution filed a motion in limine to impeach defendant with several of his prior convictions. These offenses included convictions for false imprisonment in 2003, assault with a deadly weapon in 1995, battery on a peace officer in 1980, and domestic violence in 1980. The prosecution argued the crimes involved moral turpitude and the

5

1980 convictions were not too remote because defendant had not led a legally blameless life since committing those crimes; between the 1980 convictions and the current case, defendant sustained two felony convictions, five misdemeanor convictions, and three parole violations. Defense counsel countered that the prior misdemeanor convictions were remote and therefore unduly prejudicial.

The trial court agreed that, as a general matter, a 35-year-old conviction would be excluded as remote, but here defendant has engaged in virtually continuous violent criminal conduct since 1980. According to the trial court, "[t]he pattern includes that first 1980 conviction, battery on a peace officer, as well as domestic violence, followed by an '85 hit and run. I think there is a DUI in there somewhere, but in '85 hit and run is a misdemeanor. In 1992 he suffered a second conviction for violence, the 243(d) that I previously referenced. He got almost a year in county jail for that. Three years later his first prison commitment, 1995. He suffered a conviction for a 245(a)(1).

"Maybe there is some confusion about whether or not he additionally suffered the 12022.7 or not, but that was, as I read the facts from the People, that was another stabbing started out as a 664/187. He was sentenced to six years in State Prison for that. That's followed by parole violations almost immediately upon his release.

"In 2003, he's convicted of his second set of felonies of false imprisonment. That was off of a sexual assault situation. He received the low term times two on that event, 36 months. That's followed by a 2005, 273.6, which I assume is a violation of a restraining order. He got a pretty beefy sentence for that, 270 days. 2006 parole violation, 2007 parole violation.

"So again, you are right, his criminal career starts 35 years ago, but it is basically continuous, it is violent and there are multiple entries for serious offenses. So the Court is required to look to several factors, and I will look at those and I will state those on the record.

6

"The first being remoteness, but, again, that's in those older crimes are remote, and in fact, the last conviction you could look back and say well, 2005, maybe the 273.6. I don't know if there was another non-moral turpitude misdemeanor intervening in that but, again, parole violations in '06 and '07. He has had almost no time, no serious time where he has not been involved in confrontations with law enforcement.

"So that remoteness is well outweighed, in my view, by a constant pattern of criminality.

"The second factor I'm required to look at is whether or not the prior crimes are identical. There is one crime, a 1995 crime which is charged as a 245(a)(1) that is an identical crime. There's a vast amount of caselaw, however, which indicates that just because a crime is identical does not mean anymore that it cannot be used as impeachment.

"The case of [*People v. Muldrow* (1988) 202 Cal.App.3d 636]. That was a burglary case where a judge allowed six prior convictions, three were identical residential burglaries if I remember correctly. The Court in that case used the language, the impeachment with any less than the full number of crimes would have given the defendant a, quote 'false aura of veracity,' unquote.

"The third factor I am required to look at is the potential impact on the defendant's decision to testify. I will consider that factor. I will give it the weight it deserves.

"And the fourth factor is the issue of multiple priors and how much impeachment represents proper impeachment versus how much impeachment is too much, whatever that might be. And again, I would look at that case of *Muldrow* to determine whether or not impeachment is appropriate." The trial court ruled that if defendant testified, he could be impeached with all five of the prior offenses involving moral turpitude, including the 1980 misdemeanor convictions for battery upon a police officer and domestic violence.

B

Defendant argues the evidence of the 1980 convictions should have been excluded under Evidence Code section 352[1] because the convictions were remote, were only minimally probative regarding his credibility, and were similar to the charged offense. He also claims the evidence unfairly impeached him.

"A witness may be impeached with any prior conduct involving moral turpitude whether or not it resulted in a felony conviction, subject to the trial court's exercise of discretion under Evidence Code section 352." (*People v. Clark* (2011) 52 Cal.4th 856, 931, fn. omitted (*Clark*).) Beyond the relevance requirement of moral turpitude, the " ' "trial courts have broad discretion to admit or exclude prior convictions for impeachment purposes . . . ." ' [Citation.] 'When determining whether to admit a prior conviction for impeachment purposes, the court should consider, among other factors, whether it reflects on the witness's honesty or veracity, whether it is near or remote in time, whether it is for the same or similar conduct as the charged offense, and what effect its admission would have on the defendant's decision to testify.' [Citation.]" (*People v. Edwards* (2013) 57 Cal.4th 658, 722.) We review a trial court's decision whether to admit prior convictions for impeachment purposes for an abuse of discretion. (*People v. Green* (1995) 34 Cal.App.4th 165, 182-183 (*Green*).) " 'A trial court's exercise of discretion will not be disturbed unless it appears that the resulting injury is sufficiently grave to manifest a miscarriage of justice. [Citation.] In other words, discretion is abused only if the court exceeds the bounds of reason, all of the circumstances being considered. [Citation.]' [Citation.]" (*Ibid.*)

Here, there is no dispute defendant's misdemeanor convictions for battery on a police officer and domestic violence involved moral turpitude. Rather, defendant claims

---

[1] Undesignated statutory references are to the Evidence Code.

those crimes had minimal relevance to his credibility. We disagree. The offenses are crimes of moral turpitude because they "indicate a ' "general readiness to do evil," ' from which a readiness to lie can be inferred. [Citation.]" (*People v. Chavez* (2000) 84 Cal.App.4th 25, 28.) The crimes "are acts of 'baseness, vileness or depravity in the private and social duties which a man owes to his fellowmen, or to society in general, contrary to the accepted and customary rule of right and duty between man and man.' [Citation.]" (*Id.* at pp. 28-29.) Although the inferences regarding credibility are not as direct and strong as in crimes which involve dishonesty, " ' "it is undeniable that a witness's moral depravity of any kind has some 'tendency in reason' [citation] to shake one's confidence in his honesty." ' [Citation.]" (*Id.* at p. 29.) As such, the misdemeanors reflected on defendant's honesty.

Similarly, there is no question the convictions were remote, occurring some 35 years prior to the charges in this case. While their remoteness may lessen their probative value, their age alone does not automatically render evidence of the convictions inadmissible for impeachment purposes. (*People v. Mendoza* (2000) 78 Cal.App.4th 918, 925 (*Mendoza*).) "Even a fairly remote prior conviction is admissible if the defendant has not led a legally blameless life since the time of the remote prior." (*Id.* at pp. 925-926) That is the case here. Defendant had multiple convictions in the intervening years, many of which were, in and of themselves, probative on the issue of his honesty and credibility. (*Id.* at p. 926.) The 1980 convictions were followed by six convictions in the years 1986, 1992, 1995, 2001, 2003, and 2005, and two parole violations in the years 2006 and 2007. Three of the intervening convictions, the 1992 battery, the 1995 assault with a deadly weapon, and the 2003 felony false imprisonment, were also crimes of moral turpitude. On this record, " 'the systematic occurrence' " of defendant's priors over a 35-year period " 'create[d] a pattern that [was] relevant to [his] credibility.' [Citation.]" (*Green, supra*, 34 Cal.App.4th at p. 183.) The trial court did not abuse its discretion in declining to exclude the 1980 priors on grounds of remoteness.

9

Defendant further argues the trial court erred because it considered whether the prior convictions were identical to the current offense, and not whether they were substantially similar. He contends the error led the court to examine only the similarity of the 1995 conviction, not the 1980 misdemeanors. Even if that is true, the fact that prior convictions are similar to the charged crime does not compel their exclusion. (*People v. Stewart* (1985) 171 Cal.App.3d 59, 66.) Courts have allowed as many as four identical convictions to impeach a defendant in a criminal trial. (*Green, supra*, 34 Cal.App.4th at p. 173 [four prior convictions for unlawful driving of a vehicle admitted in prosecution for unlawful driving of a vehicle]; *People v. Muldrow, supra*, 202 Cal.App.3d at p. 647 [three prior convictions for burglary admitted in prosecution for burglary]; *Stewart* , at p. 63 [four prior convictions for robbery admitted in prosecution for robbery].) Here, the two misdemeanor convictions for spousal abuse and battery on a police officer were both for assaultive conduct, so the conduct was at least nominally similar. Even if this factor may have weighed in favor of excluding the convictions, it did not compel exclusion, especially in light of the other factors. The trial court did not exceed the bounds of reason in admitting two prior convictions that were similar, but not identical, to the charged crime of assault with a deadly weapon.

The last factor does not apply here because the trial court's decision did not inhibit defendant from testifying. (*Mendoza, supra*, 78 Cal.App.4th at p. 926.) In any event, on this factor it is important to note that the two misdemeanor convictions were not the only convictions admitted for impeachment. Three other convictions, the 1992 battery, the 1995 assault with a deadly weapon, and the 2003 felony false imprisonment, were admitted. We cannot discern how the admission of two additional misdemeanor convictions would have tipped the balance regarding defendant's decision to testify. Considering all the factors, we find no abuse of discretion in admitting the 1980 misdemeanor convictions.

10

## II

Defendant also contends the trial court abused its discretion by allowing admission of the details of his 1995 conviction for assault with a deadly weapon.

### A

The prosecution moved in limine to admit, pursuant to section 1103, evidence of defendant's violent character (including his 1995 conviction for assault with a deadly weapon) if defendant sought to admit evidence of Donald's violent character. Defense counsel countered that the underlying details of the prior assault with a deadly weapon should be excluded pursuant to section 352 because the details would be unduly time consuming, inflammatory, substantially prejudicial and not probative. Defense counsel also sought to exclude defendant's statements in connection with the prior conviction that he had been acting in self-defense. The trial court agreed to exclude defendant's statements but determined that law enforcement officers could testify about the facts of the 1995 conviction and their observations in arresting defendant. The trial court ruled the testimony would be limited to allowing a brief description about the nature and location of the injuries in that case.

During trial, defense counsel sought clarification of the trial court's ruling. The district attorney indicated she had evidence that defendant had inflicted eight stab wounds on the victim. Defense counsel indicated it would be okay to admit evidence of the stab wound to the victim's back, but testimony about the other seven wounds was unnecessary. The trial court ruled the witnesses could describe the total number of wounds and offer a brief description, but added they should not get into too much detail. Before calling the rebuttal witnesses, the prosecutor again sought to clarify the scope of the trial court's ruling, noting that in the prior assault half of the victim's ear was almost severed. The trial court said she could ask about the location and number of stab wounds but could not elicit testimony about the severity of the injuries sustained by the victim.

In rebuttal, the prosecution's witnesses testified that police officers responded to a stabbing and the victim suffered stab wounds on his lower back, right eye, right ear, right leg, left hand, chin, and mouth. Defendant was covered in blood, agitated, and aggressive. When police officers arrested him, he tried to kick the windows out of the patrol car.

B

Defendant argues the graphic details of the multiple stab wounds and defendant's combative behavior toward police was inflammatory and should have been excluded under section 352. He claims the evidence was particularly prejudicial because the prior conviction was for the same offense for which he was currently charged.

In general, character evidence is inadmissible to prove acts consistent with that character on a specific occasion. (§ 1101, subd. (a).) However, if the defendant offers evidence showing the victim has a violent character, the prosecution may offer evidence of the defendant's violent character to show the defendant acted in conformity with it. (§ 1103, subd. (b); *People v. Myers* (2007) 148 Cal.App.4th 546, 552.) "In other words, if . . . a defendant offers evidence to establish that the victim was a violent person, thereby inviting the jury to infer that the victim acted violently during the events in question, then the prosecution is permitted to introduce evidence demonstrating that (1) the victim was not a violent person and (2) the defendant was a violent person, from which the jury might infer it was the defendant who acted violently." (*People v. Fuiava* (2012) 53 Cal.4th 622, 696.) Here, as defendant concedes, he offered evidence that the victim was a violent person. Accordingly, the prosecution was permitted to introduce evidence demonstrating defendant was a violent person. However, defendant contends the details of the offense should have been excluded under section 352.

We review the trial court's ruling for abuse of discretion. (*Clark, supra*, 52 Cal.4th at p. 893.) We will not overturn a trial court's ruling under section 352 except upon a finding the trial court exercised its discretion " 'in an arbitrary, capricious or

12

patently absurd manner that resulted in a manifest miscarriage of justice. [Citations.]'
[Citation.]" (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124-1125.) Evidence is substantially more prejudicial than probative if it "poses an intolerable 'risk to the fairness of the proceedings or the reliability of the outcome' " (*People v. Waidla* (2000) 22 Cal.4th 690, 724) and "uniquely tends to evoke an emotional bias against the defendant" without regard to relevance. (*People v. Killebrew* (2002) 103 Cal.App.4th 644, 650.)

Here, the limited facts regarding defendant's prior assault with a deadly weapon conviction and his aggressive conduct upon being arrested were highly probative to rebut defendant's claim that Donald was the aggressor in the fight. Nevertheless, the trial court limited the details of the prior conviction, barring details of the wounds and their severity. That limitation reduced the inflammatory effect and limited the amount of trial time consumed by presentation of the evidence. The trial court weighed the probative value of the evidence and "understood and fulfilled its responsibilities under Evidence Code section 352." (*People v. Williams* (1997) 16 Cal.4th 153, 213.) The evidence was not unduly prejudicial and the trial court did not abuse its discretion.

## DISPOSITION

The judgment is affirmed.

/S/

Mauro, J.

We concur:

/S/

Raye, P. J.

/S/

Blease, J.

13