Filed 6/23/21  P. v. Dominguez CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>MANUEL FERNANDO DOMINGUEZ,<br><br>  Defendant and Appellant. | F078971<br><br>(Super. Ct. No. BF172104A)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  David R. Zulfa, Judge.

Linnéa M. Johnson, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez and Jeffrey D. Firestone, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

Following retrial, appellant Manuel Fernando Dominguez was convicted by jury of second degree robbery (Pen. Code,[1] § 212.5, subd. (c)). Pursuant to a bench trial, the court found Dominguez had suffered four prior convictions that qualified as strikes (§§ 667, subds. (c)-(j) & 1170.12, subds. (a)-(e)); that these prior convictions were prior serious felonies (§ 667, subd. (a)); and that he had served a prior prison term (§ 667.5) for two of his prior convictions. Dominguez was sentenced to a prison term of 25 years to life.

Dominguez raises the following issues on appeal: (1) the trial court erred in denying his motion to exclude statements he involuntarily made to police in violation of *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*); (2) the trial court abused its discretion by excluding evidence of the victim's prior felony convictions; (3) the trial court abused its discretion by denying his motion for a new trial; (4) the prejudicial effect of these cumulative errors necessitates reversal of his conviction; and (5) this case must be remanded back to the trial court for the correction of sentencing errors. The judgment of conviction is affirmed. The case is remanded back to the trial court for the correction of errors identified herein.

## PROCEDURAL HISTORY

On October 9, 2018, the Kern County District Attorney's Office filed an amended information charging Dominguez with second degree robbery (§ 212.5, subd. (c), count 1) and possession of drug paraphernalia (Health & Saf. Code, § 11364, count 2).

With respect to count 1, the information alleged that in case No. RIF097247, Dominguez had suffered two prior convictions for burglary (§ 459), one of which was a strike (§§ 667, subds. (c)-(j) & 1170.12, subds. (a)-(e)); both were prior serious felonies (§ 667, subd. (a)); and that for one burglary, he had served a prior prison term (§ 667.5,

---

[1] All undefined statutory citations are to the Penal Code unless otherwise indicated.

subd. (b)).  As to this same count, the information further alleged that in case No. 04NF1722, Dominguez had suffered prior convictions for attempted robbery (§§ 664/211), robbery (§ 211), and two convictions for assault with a deadly weapon (§ 245, subd. (a)(1)).  The information alleged all of these convictions were strikes (§§ 667, subds. (c)-(j) & 1170.12, subds. (a)-(e)); that all but one conviction were prior serious felonies (§ 667, subd. (a)); and that he had served a prior prison term (§ 667.5) for the attempted robbery.  Finally, the information alleged Dominguez had suffered a prior serious felony conviction in case No. ATPM05750101 for the possession of a weapon by a prisoner while in custody (§ 4502, subd. (a)).

On October 12, 2018, the trial court granted defense counsel's motion to sever count 2 and to exclude reference to drug paraphernalia in front of the jury.  Dominguez entered a plea of no contest to count 2.

On October 24, 2018, following deliberations, the jury was unable to reach a verdict on count 1.  The trial court declared a mistrial.  With respect to his conviction on count 2, the court sentenced Dominguez to 180 days in jail with credit for time served.  The court waived all fines and fees.

On January 17, 2019, following a retrial, Dominguez was convicted by jury of second degree robbery (§ 212.5, subd. (c)).  The trial court found Dominguez had suffered four prior convictions qualifying as strikes (§§ 667, subds. (c)-(j) & 1170.12, subds. (a)-(e)), four prior serious felonies (§ 667, subd. (a)), and that he had served two prior prison terms (§ 667.5).  One enhancement allegation based upon a prior conviction for the possession of a weapon by a prisoner while in custody (§ 4502, subd. (a)) was dismissed.

On March 7, 2019, the trial court sentenced Dominguez to a prison term of 25 years to life.  The court struck the prior serious felony enhancements and prior prison term enhancements allegations.  It also resentenced Dominguez to a term of 180 days on

count 2, and ordered count 1 to be served concurrent with count 2. As to both counts, the trial court ordered Dominguez to pay various fines and fees.

On March 8, 2019, Dominguez filed a timely notice of appeal.

## FACTUAL HISTORY

On April 29, 2018, Antonia Lugo was selling fruit from a cart in a parking lot in Bakersfield. Lugo's transactions were cash only. A man parked his black SUV nearby, walked in front of her cart, and stood approximately one foot away from her.

The man told Lugo, "give me the money" Lugo thought he was joking and asked, " 'What money?' " He pointed to her apron and said, " 'The [money] that you have there.' " Lugo told the man the money had already been taken. He demanded, " 'Give it to me.' " Lugo did not want to give him the money, but she felt scared because he was not removing his hand from his right hip area, where she thought he had something. She gave him $195 from her apron.

The man ordered Lugo, " 'Give me the other one,' " pointing at her wallet. Lugo replied, " 'There is no more [money].' " He told Lugo, " 'I have the gun here,' " while lifting the right side of his shirt, exposing a gun. Lugo felt scared. She gave the man the money from her wallet. The man returned to his vehicle and fled. Following the incident, a couple arrived at Lugo's fruit cart. She asked them to call 911.

Bakersfield Police Officers Bailey and Schleicher responded to the call. Lugo described the suspect's vehicle as a black SUV. She gave Officer Bailey a piece of paper on which she had written the license plate number of the SUV. Lugo described the suspect as a Hispanic male, about 42 years old, five feet five inches tall, heavy build with short brown hair and a brown mustache with tattoos over his eyes, on both sides of his face, on his chin, on his neck, and on his arms. She described the suspect as wearing a black T-shirt and green and yellow plaid shorts.

4.

Officer Bailey entered the license plate information into a records management system. The vehicle affiliated with the license plate number provided by Lugo was a Dodge SUV. Dominguez was listed as the vehicle's registered owner.

Bailey obtained Dominguez's driver's license number and a photograph that was linked to it, which Bailey identified in court as being a photograph of Dominguez. According to Bailey, Dominguez's photograph "matched the exact description" of the suspect given by Lugo. Officer Bailey prepared a six-pack photographic lineup, which included Dominguez's photograph. When Officer Bailey showed Lugo the photographic lineup, she identified Dominguez's photograph within five seconds.

On the way to Dominguez's home, Officer Schleicher observed Dominguez driving a black Dodge Caliber. The Caliber's license plate number matched the license plate number provided by Lugo. Officer Schleicher followed the vehicle and initiated a traffic stop.

Officer Bailey brought Lugo to the location where the traffic stop occurred. Following an admonition, Lugo identified Dominguez as the man who had robbed her. She stated he had changed his clothes since the incident, but Dominguez had the same face as the man who robbed her.

## DISCUSSION

### I. Appellant Concedes His Statements to Police Were Not Presented by the Prosecutor at Trial

In his opening brief, Dominguez alleged the trial court erred in denying his motion to exclude statements he made to police in violation of his *Miranda* rights. According to Dominguez, his statements were also made involuntarily. The People replied that Dominguez's argument is meritless because the prosecutor did not offer Dominguez's statements as evidence at his trial. In his reply brief, Dominguez concedes any violation of his *Miranda* rights was not prejudicial as the prosecutor did not reference his

5.

statements during trial. Based upon his concession, we do not address his original argument.

## II. The Trial Court Acted Within its Discretion by Excluding Evidence of Lugo's Prior Felony Convictions

Dominguez contends the trial court abused its discretion by excluding evidence of Lugo's prior felony convictions for impeachment purposes at trial. The People argue the trial court's exclusion of this evidence was within the bounds of reason; Lugo's convictions were remote in time and she had not suffered any significant convictions since the prior convictions occurred. The People further contend any presumed error is harmless beyond a reasonable doubt.

We reject Dominguez's assertion that the trial court erred by excluding evidence of Lugo's prior convictions. Because we find no error in the trial court's ruling, we do not address Dominguez's assertion of prejudice.

### A. Background

At Dominguez's retrial, defense counsel sought to introduce evidence of Lugo's prior convictions for purposes of impeachment. The prosecutor objected, arguing Lugo's prior convictions were primarily misdemeanors, they were remote in time, and her convictions were no longer considered felonies.[2] Lugo, who was 62 years old at the time the robbery occurred, had suffered convictions for the following offenses: misdemeanor convictions from 1974, 1989, and 1990 for burglary (§ 459); a misdemeanor conviction for theft/petty-theft with a prior theft-related conviction (§§ 484/666) in 1991; misdemeanor convictions for theft (§ 484), two which occurred in 1993 and one in 1995;

_____

[2] On November 4, 2014, the voters enacted Proposition 47, the Safe Neighborhood and Schools Act. Proposition 47 added section 1170.18 to the Penal Code, which rendered the felony crime of petty theft with a prior theft-related conviction, a misdemeanor. (§ 666, subds. (a), (b).) The record does not show that Lugo had filed a petition for redesignation of her convictions under Proposition 47's resentencing provision (§ 1170.18, subd. (i)).

6.

an unclassified conviction for theft (§ 484, subd. (a)) in 1976; and two felony convictions for petty theft with a prior conviction (§ 666) in 1994 and 1995. Since 1995, Lugo had one arrest for failure to appear (Veh. Code, § 40508) in 2008, and one misdemeanor conviction for driving without a license (Veh. Code, § 12500) in 2008.

Following argument by the parties, the trial court excluded evidence of Lugo's prior felony convictions. The court explained the remoteness of a conviction did not render it irrelevant per se, but it observed Lugo had not suffered a conviction for a crime of moral turpitude since 1995. Further, Lugo's felony convictions were over 23 years old. According to the court, "it … appears that she may have overcome whatever it was that was challenging her at that time."

The court concluded, "the probative value of these sorts of convictions, even when they're not remote is limited at best and perhaps overestimated by the Court and the parties …; however, when they are this old, 23 and 24 years old respectively, the probative value is diminished even more. And, quite frankly, when they are this old without a continued criminality or criminal history, the probative value becomes almost nonexistent …. And so … [the court] will find that the probative value is substantially outweighed by the [potential] prejudicial effect and I will not allow the impeachment."

## B. Relevant Legal Principles

Under Evidence Code sections 788 and 352, the trial court retains discretion to prohibit impeachment by a prior conviction when the probative value of the conviction is substantially outweighed by its prejudicial effect. (*People v. Clair* (1992) 2 Cal.4th 629, 654; *People v. Mendoza* (2000) 78 Cal.App.4th 918, 925.) In exercising its discretion, the trial court must consider: " '(1) whether the prior conviction reflects adversely on an individual's honesty or veracity; (2) the nearness or remoteness in time of a prior conviction; (3) whether the prior conviction is for the same or substantially similar

7.

conduct to the charged offense; and (4) what the effect will be if the defendant does not testify out of fear of being prejudiced because of impeachment by prior convictions.' " (*People v. Green* (1995) 34 Cal.App.4th 165, 182, quoting *People v. Muldrow* (1988) 202 Cal.App.3d 636, 644; *People v. Clark* (2011) 52 Cal.4th 856, 931-932.) "When the witness subject to impeachment is not the defendant, those factors prominently include whether the conviction (1) reflects on honesty and (2) is near in time." (*People v. Clair, supra*, 2 Cal.4th at p. 654.)

On appeal, we review the trial court's ruling for an abuse of discretion. (*People v. Chavez* (2018) 21 Cal.App.5th 971, 1010.) "We will reverse a trial court's ruling only if the record shows the court acted in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice." (*Ibid.*)

### C.     Analysis

We reject Dominguez's assertion that the trial court abused its discretion in determining the probative value of Lugo's prior felony convictions was substantially outweighed by their potential prejudice. Lugo's 1994 and 1995 convictions for petty theft with a prior theft-related conviction (§ 666) occurred over 20 years before Dominguez's trial. Since 1995, Lugo had not sustained any significant contacts with the criminal justice system. The trial court considered the probative value of admitting evidence of Lugo's felony convictions, but determined the value of this evidence was virtually nonexistent based upon how remote in time the convictions had occurred. The trial court's findings and its ruling were adequately stated and supported by the record. We therefore find no abuse of discretion in the court's ruling.

Insofar as Dominguez observes evidence of Lugo's prior convictions was held admissible in Dominguez's first trial, that does not support the conclusion that the trial court erred in concluding otherwise at his retrial. As Dominguez acknowledges, "no two trials are exactly the same."

Dominguez further contends the trial court's exclusion of Lugo's prior felony convictions was also a prejudicial violation of the "Truth in Evidence" Provision of the State Constitution, as well as his right to "Due Process, a Fair Trial, and a Reliable Determination of Guilt in violation of the Sixth and Fourteenth Amendments to the [federal] Constitution." Dominguez submits, "[w]here the impeachment evidence should not have been excluded under Evidence Code section 352, … the trial court's refusal to permit the defense to impeach Ms. Lugo with her two felony convictions violated [the Truth in Evidence] provision." Our conclusion that the trial court acted within its discretion in excluding use of Lugo's prior convictions for impeachment purposes obviates the need to address Dominguez's remaining contentions.

### III. The Trial Court Did Not Err in Denying Appellant's Motion for a New Trial

Dominguez argues the trial court erred in denying his motion for a new trial. His motion was predicated upon the fact that he was precluded from eliciting testimony which he contends, would have established a motive for Lugo to fabricate the robbery. According to Dominguez, evidence of Lugo's motive would have been established if (1) the trial court had not improperly limited the scope of defense counsel's questioning during her cross-examination of Lugo; and (2) the prosecutor had timely disclosed evidence consistent with her obligation under *Brady v. Maryland* (1963) 373 U.S. 83 (*Brady*). We conclude his argument is without merit and find that the trial court properly denied Dominguez's motion.

### A. Background

During cross-examination, Lugo stated that on the day of the robbery, her boss drove her and two other women up from Los Angeles to Bakersfield to sell fruit. Defense counsel asked Lugo whether she liked her boss. The prosecutor objected. Following a sidebar discussion, the trial court permitted Lugo to answer defense counsel's question.

9.

Lugo replied, "Yes, I do like him. He treats me fine." She also testified that at the end of the day, she turns in all of the money she has earned to her boss and that she is paid per day. Defense counsel asked whether Lugo's boss provides her with a place to live. The trial court sustained the People's objection to defense counsel's question on relevance grounds.

During a sidebar discussion, defense counsel explained her question was relevant as it pertained to "motive, bias, and interest." Defense counsel theorized Lugo may have been a victim of labor trafficking, giving her a motive to fabricate the robbery. Defense counsel acknowledged she did not have an expert witness prepared to offer testimony as to labor trafficking, but she claimed her line of questioning was nonetheless relevant to Lugo's motive. If the court had permitted her to question Lugo further on the issue, she would have asked whether Lugo's boss provides her with a free place to stay and how much money she is paid per day.

Following retrial, the prosecutor emailed defense counsel stating that she had received an email correspondence from Lugo after the trial had concluded. Lugo had asked for a copy of the police report from the robbery, explaining "her 'civil' attorney needed it for her 'status'." The prosecutor told Lugo that she could not furnish a copy of the report to her, but her attorney could obtain a copy from the Bakersfield Police Department. The prosecutor did not inquire further about Lugo's question.

Defense counsel filed a motion for a new trial. At a hearing on the motion, defense counsel argued the trial court had improperly limited her cross-examination, precluding counsel from eliciting evidence that went to an affirmative defense, i.e., that Lugo had stolen money from the fruit cart and fabricated a story about a robbery. Defense counsel suspected Lugo was a victim of human trafficking based upon a newspaper article she had read, and that she fabricated a story about a robbery to pocket her earnings from the fruit cart and to apply for a U-Visa. Defense counsel further

10.

argued Lugo's post-trial email concerning her "status," meant Lugo was an undocumented alien. According to defense counsel, this information could have been used for impeachment purposes, and it was material to Dominguez's "affirmative defense."

The prosecutor responded that she had no affirmative obligation to ask Lugo about her immigration status and that Lugo never mentioned anything about her immigration status in prior contacts. The prosecutor further argued there was no evidence to support defense counsel's theory that Lugo was a victim of labor trafficking, that defense counsel's news article was not supported by legal research, and that the defense failed to proffer expert testimony explaining that fruit vendors are victims of labor trafficking. The prosecutor further observed defense counsel had been given some leeway to ask questions about Lugo's boss, and Lugo had offered credible testimony stating she liked her boss and that she had no problems with him. According to the prosecutor, there was no basis for counsel's motion for a new trial.

Following further argument, the trial court denied Dominguez's motion. The court observed it had allowed defense counsel to ask some questions regarding the details of Lugo's employment, but counsel "had basically exhausted that area in what the Court deemed would be relevant and, pursuant to 352, would not result in a substantial prejudice that outweighs any probative value." The court observed defense counsel was not excluded from asking further questions about how much Lugo was paid.[3] Rather, she had been prohibited from asking Lugo questions relating to her immigration status. The court added that defense counsel's theory that Lugo had fabricated the robbery went to the sufficiency of the evidence rather than an affirmative defense.

---

**3** Defense counsel subsequently clarified the court had prohibited her from asking questions about the disbursement of pay between Lugo and her boss, including, questions regarding how much Lugo was paid.

11.

With respect to Lugo's immigration status, the court stated the Penal Code expressly precludes such information from being disclosed in criminal proceedings. (See, Evid. Code, § 351.4, subd. (a).) While defense counsel had argued Lugo may have fabricated the robbery to obtain a U-Visa, the trial court stated that because the robbery had not been accomplished using physical force, Lugo would not qualify for a U-Visa. Further, based upon the answers Lugo gave during cross-examination, the court concluded there was a substantial chance that the prejudice of this information would outweigh any probative value.

Finally, regarding Lugo's post-trial statement concerning her "status," the trial court observed the prosecutor was not under any legal obligation to take affirmative steps to determine the legal status of a civilian witness. According to the trial court, there was "no evidence of any bargaining between [Lugo] and the District Attorney's Office." The court concluded Lugo's legal status was neither material nor exculpatory information.

## B.    Relevant Legal Principles

Pursuant to section 1181, a motion for new trial may be granted "[w]hen new evidence is discovered material to the defendant, and which he could not, with reasonable diligence, have discovered and produced at trial." (§ 1181, subd. (8).) For newly discovered evidence, the defendant must show the following: (1) the evidence, not merely its materiality, be newly discovered; (2) it not be merely cumulative; (3) it be such as to render a different result probable upon retrial; (4) the defendant could not with reasonable diligence have discovered and produced it at trial; and (5) the new facts be shown by the best evidence available. (*People v. Howard* (2010) 51 Cal.4th 15, 43 (*Howard*); *People v. Beard* (1956) 46 Cal.2d 278, 281, accord.)

The trial court's denial of a motion for a new trial is reviewed for an abuse of discretion. (*People v. Howard, supra,* 51 Cal.4th at pp. 42-43.) The trial court's ruling " ' " 'will not be disturbed unless a manifest and unmistakable abuse of discretion

12.

clearly appears.' " ' " (*Ibid.*; *People v. Verdugo* (2010) 50 Cal.4th 263, 308-309; *People v. Minnick* (1989) 214 Cal.App.3d 1478, 1481.)

### C. Analysis

### 1. The Limited Scope of Defense Counsel's Cross-Examination

First, Dominguez contends his motion for new trial should have been granted because the trial court prohibited him from eliciting questions which may have established a motive for Lugo to fabricate the robbery. Defense counsel's theory that Lugo fabricated the robbery so that she could pocket her earnings or apply for a U-Visa rests upon inferences not drawn from facts in the record, calls for speculation, and is not tenable in light of the strong evidence presented against Lugo at trial which established that a robbery had in fact occurred.

Even if defense counsel had been permitted to resume her line of questioning during cross-examination, we do not know what answers Lugo would have provided and whether her testimony would have supported defense counsel's labor trafficking theory. Dominguez acknowledges defense counsel was unable to lay a foundation for his theory. However, assuming Lugo's testimony would have been favorable to defense counsel's theory, we do not agree with Dominguez's contention that a different result is likely upon retrial. Notwithstanding the fact that defense counsel's labor trafficking theory is unconvincing upon this record, Dominguez fails to persuasively argue he could have established Lugo was an undocumented alien at trial. By his own admission, this was essential to his theory.

Upon this record, it would be purely speculative to presume Lugo was an undocumented alien, that defense counsel could have established as much at trial, and that defense counsel could have adduced evidence to support her theory that Lugo fabricated the robbery to pursue a U-Visa. As the record before us is insufficient to

support the conclusion that a different outcome is reasonably likely to occur upon retrial, we conclude Dominguez's motion for a new trial was properly denied.

### 2. The People's Post-trial Disclosure of Lugo's Email

Second, Dominguez contends his motion for new trial should have been granted because the prosecutor violated *Brady* and failed to comply with her discovery obligations pursuant to section 1054.1. Dominguez asserts that based on Lugo's email, the prosecutor should have asked Lugo whether her civil attorney was attempting to obtain a U-Visa on her behalf. The People disagree, as do we.

The prosecutor was not under any affirmative obligation to discover Lugo's immigration status. Contrary to Dominguez's assertion, and based upon the facts of this case, Lugo's immigration status is not impeachment evidence or potentially exculpatory material in the government's possession. (*United States v. Bagley* (1985) 473 U.S. 667, 674; *People v. Hammon* (1997) 15 Cal.4th 1117, 1125; *People v. Lewis* (2015) 240 Cal.App.4th 257, 263.) Even assuming the prosecutor were required to furnish this information to defense counsel, Dominguez fails to persuade us that evidence of Lugo's immigration status would have been admissible at trial.

Evidence Code section 351.4 limits evidence of a person's immigration status in civil and criminal cases. With some exceptions not relevant here, the statute provides, "[i]n a criminal action, evidence of a person's immigration status shall not be disclosed in open court by a party or his or her attorney unless the judge presiding over the matter first determines that the evidence is admissible in an in camera hearing requested by the party seeking disclosure of the person's immigration status." (Evid. Code, § 351.4, subd. (a).) The statute was intended to address the danger that evidence of a witness's legal status as an undocumented alien may prejudice the jury against the witness. A juror may believe convicting the defendant would be tantamount to granting the witness permanent status in the United States. (*People v. Villa* (2020) 55 Cal.App.5th 1042, 1053-1054.)

14.

Here, Dominguez suggests if the prosecutor had disclosed Lugo's immigration status to defense counsel, counsel could have requested an in camera hearing to permit the court to determine the admissibility of this information. In view of the prejudicial nature of a witness's immigration status, the proscription against the use of such evidence under Evidence Code section 351.4, and the lack of relevant evidence otherwise supporting defense counsel's labor trafficking theory, we reject Dominguez's implied assertion that evidence of Lugo's *presumed* status as an undocumented alien would have been admissible at trial.

As Dominguez offers little more than speculative assumptions to support his assertion that his motion for new trial should have been granted, we conclude the trial court did not err in denying his motion. Even assuming all other criteria had been met as set forth by *Howard, supra,* 51 Cal.4th at page 43, Dominguez has not proven a different result would be probable upon retrial. (*Ibid.* [a motion for new trial based upon newly discovered evidence requires the defendant to show the evidence would render a different result probable upon retrial.) Nor does Dominguez's argument persuade us that the prosecutor failed to disclose *Brady* material. (*United States v. Bagley, supra,* 473 U.S. at p. 682 (lead opn. by Blackmun, J.) [under *Brady*, "evidence is material only if there is a reasonable probability that, had [it] been disclosed to the defense, the result ... would have been different"].)

Relying upon *U.S. v. Blanco* (9th Cir. 2004) 392 F.3d 382 (*Blanco*), Dominguez contends this Court should require the People to provide additional information about Lugo's immigration status, "and, depending on what this evidence shows, … order a new trial." *Blanco* is not controlling and is factually distinguishable from the instant case.

In *United States v. Blanco*, the Ninth Circuit remanded the case back to the district court to "order full disclosure by the government of any and all potential *Brady*[] material" concerning a particular trial witness. (*Blanco, supra*, 392 F.3d at pp. 385, 394.)

There, the record affirmatively demonstrated the prosecution had suppressed *Brady* material concerning immigration benefits given to the witness who was a Mexican national facing the " 'specter of deportation.' " (*Id*. at pp. 390-392, 395.) Specifically, the prosecution failed to disclose the witness was receiving special treatment from the United States Immigration and Naturalization Services in return for work he had performed for the United States Drug Enforcement Agency. (*Id*. at p. 392.) The Ninth Circuit held this information was "highly relevant impeachment material" that should have been furnished to the defense. (*Ibid*.) Until this information was fortuitously discovered during trial, the government had affirmatively represented the witness's sole compensation for his work was a monetary award. (*Ibid*.)

By contrast, the prosecutor here did not have any information showing Lugo had received benefits from the government or the District Attorney's Office in return for her cooperation in the instant case. As the trial court observed, there was "no evidence of any bargaining between [Lugo] and the District Attorney's Office." Moreover, what little information the prosecutor did learn was timely disclosed to defense counsel. We find no *Brady* violation under the circumstances, and no grounds for Dominguez's motion for new trial.

## IV. The Cumulative Effect of the Trial Court's Evidentiary Rulings Do Not Support Reversal of Appellant's Conviction

Dominguez contends the cumulative effect of the trial court's erroneous rulings denied him the right to due process and a fair trial. Because we conclude he has failed to demonstrate error, we need not address his assertion that the cumulative effect of these purported errors requires reversal of his conviction.

## V. Correction of the Minute Order and Abstract of Judgment

Dominguez argues this case should be remanded back to the trial court for the correction of multiple errors in the record. First, he contends the trial court made a true finding as to four strike priors, but that the minute order shows the court found seven

16.

strike priors to be true. Second, he asserts the abstract of judgment conflicts with the trial court's sentencing order based upon the imposition of various fines and fees on count 2. Finally, Dominguez contends the prosecution failed to prove one of his prior convictions for assault with a deadly weapon qualified as a strike. Dominguez concedes none of these alleged errors will reduce his prison sentence.

The People agree that the trial court must correct various sentencing errors, but they disagree with the nature of the errors identified by Dominguez. They further contend sufficient evidence supports the trial court's conclusion that Dominguez's prior assault conviction qualifies as a strike.

We agree that this case must be remanded to correct errors in the minute order and, possibly, the abstract of judgment. We reject Dominguez's assertion that insufficient evidence supports the court's finding that his prior conviction for assault with a deadly weapon qualified as a strike.[4]

### A. Correction of the Minute Order

The court found four strike priors had been proven.

> • Allegation 3 alleged that in case No. RIF097247,
> Dominguez had suffered a prior conviction for burglary
> (§ 459), which was a strike (§§ 667, subds. (c)-(j) & 1170.12,
> subds. (a)-(e)). The court found this allegation had been
> proven.

> • Allegations 4 through 7 alleged that in case No. 04NF1722,
> Dominguez had suffered prior convictions for attempted
> robbery (§§ 664/211), robbery (§ 211), and two convictions
> for assault with a deadly weapon (§ 245, subd. (a)(1)), all of
> which were alleged strikes (§§ 667, subds. (c)-(j) & 1170.12,

---

[4] We address this argument in section VI, *post*.

subds. (a)-(e)).  The court found these allegations had been proven.

The January 17, 2019 minute order reflects true findings on *five* strike priors.  As the People correctly observe, it appears allegation No. 5 and allegation No. 6 are duplicate allegations based upon the same prior conviction for assault with a deadly weapon in case No. 04NF1722.  Thus, the January 17, 2019 minute order should clarify which allegation the court specifically found proven.

Dominguez further contends the trial court failed to find other allegations true, specifically allegation Nos. 8 through 12, 14, and 15 in the amended information.  With one exception, the record reflects otherwise.  The trial court found either allegation No. 11 or 12 to be true, but the court did not find both allegations true.  Dominguez suffered only one prior conviction for burglary in case No. RIF097247.  Because allegation Nos. 11 and 12 are based upon the same burglary conviction arising from the same case, and they allege the same enhancement (§ 667, subd. (a)), the January 17, 2019 minute order should reflect a true finding on only one of these allegations.

Contrary to Dominguez's assertion, we see no need for further clarification by the trial court regarding allegation Nos. 8 through 12, 14, and 15.  The court clearly intended to strike punishment on *all* of the prior serious felony and prior prison term enhancements.  And, insofar as Dominguez asserts the court failed to make true findings upon some of these enhancements, the record belies his assertion.

**B.      Correction of the Abstract of Judgment**

Dominguez contends the abstract of judgment must be corrected because it does not accurately reflect fines and fees imposed by the court at sentencing.  The People agree that correction of the abstract of judgment is needed, but they assert the error relates to the sentence imposed.  On remand, we will order the trial court to address the

18.

fees imposed on count 2. We reject the People's assertion that further modification of the abstract of judgment is needed to reflect Dominguez's sentence on count 2.

When the court initially sentenced Dominguez on count 2, it waived all fines and fees. When the court resentenced Dominguez on count 2, it ordered him to pay a $40 court security fee (§ 1465.8) and a $30 criminal conviction assessment (Gov. Code, § 70373) on count 1 and on 2, for a total of $80 and $60, respectively. The abstract of judgment reflects these combined fees.

Dominguez contends the trial court improperly added the fines imposed pursuant to his misdemeanor conviction (count 2) to the abstract of judgment. The record does not clarify whether the trial court's subsequent imposition of fees on count 2 was intentional or inadvertent, but it appears the fees should not have been imposed at all. On remand, we will order the trial court to clarify its order imposing fees on count 2, which were previously waived. If the trial court strikes the fees imposed on count 2 to reflect its original order, the court is ordered to modify the minute order and the abstract of judgment accordingly.

Finally, contrary to the People's suggestion, we see no need for the trial court to "correct" the abstract of judgment to include further reference to Dominguez's misdemeanor conviction.

### VI. Sufficient Evidence Supports the Trial Court's Finding That Appellant's Conviction for Assault with a Deadly Weapon Qualifies as a Strike

Dominguez argues there is insufficient evidence supporting the trial court's finding that his prior conviction for assault with a deadly weapon was a strike. According to Dominguez, his RAP sheet shows his assault conviction was based upon assault with force likely to produce great bodily injury, which does not qualify as a strike. We conclude his assertion is meritless.

## A.    Background

To prove Dominguez's prior conviction for assault qualified as a strike, the prosecutor proffered a certified copy of Dominguez's RAP sheet, Dominguez's booking photograph, and a section 969, subdivision (b) packet.  Dominguez's RAP sheet states: "245(A) (1) PC-FORCE/ADW NOT FIREARM:GBI LIKELY [¶] –CHRG STAYED." This conviction refers to case No. 04NF1722.  The abstract of judgment for this same case number shows that Dominguez was convicted in "Count 3A" of "PC | 245(A)(1) Assault w/deadly weapon."  His conviction on this count was stayed pursuant to section 654.  (*Ibid.*)

The abstract of judgment also reflects a conviction in "Count 1A" for "664-211-212.5(c)" for the crime of "Attempted robbery second."  A stayed enhancement for the personal use of a deadly weapon (§ 12022, subd. (b)(1)) is attached to this count.

In determining Dominguez's conviction for assault with a deadly weapon qualified as a strike, the court stated the following:  "As to the 245(a)(1) that is alleged …, I do find based on the totality of the circumstances that there is sufficient evidence to find that one is a valid strike prior as well.  I'm reliant [sic] upon the fact that the conviction occurred.  I'm also reliant [sic] upon the abstract of judgment.   It does show that there was a 12022(b)(1) conviction [sic] in that same case.  That conviction [sic] suggests to the Court that it is a reasonable inference that the 245(a)(1), which was stayed pursuant to 654, which tells me it was the product of the same course of conduct and/or action did include a weapon, a deadly weapon; and, therefore, is appropriate to find that it has been proven beyond a reasonable doubt.  And that … therefore, it does qualify as a strike and that [Dominguez] is the person that was in fact convicted of said strike."

## B.    Standard of Review

"The People must prove all elements of an alleged sentence enhancement beyond a reasonable doubt."  (*People v. Miles* (2008) 43 Cal.4th 1074, 1082.)  "On review, we

examine the record in the light most favorable to the judgment to ascertain whether it is supported by substantial evidence. In other words, we determine whether a rational trier of fact could have found that the prosecution sustained its burden of proving the elements of the sentence enhancement beyond a reasonable doubt." (*People v. Delgado* (2008) 43 Cal.4th 1059, 1067 (*Delgado*).)

Certified documents create a presumption of conviction that can only be overcome by evidence calling into question " 'the authenticity, accuracy, or sufficiency of the prior conviction records.' " (*Delgado, supra,* 43 Cal.4th at p. 1066.)  "[I]f the prior conviction was for an offense that can be committed in multiple ways, and the record of the conviction does not disclose how the offense was committed, a court must presume the conviction was for the least serious form of the offense." (*Ibid.*)  However, once the trial court has found the existence of a prior strike conviction, on appeal,  "we examine the record in the light most favorable to the judgment to ascertain whether it is supported by substantial evidence." (*Id.* at p. 1067.)

### C.    Analysis

Former section 245, subdivision (a)(1), as it existed at the time of Dominguez's conviction in 2004, proscribed assault upon the person of another either with a deadly weapon or instrument other than a firearm, or by any means of force likely to produce great bodily injury.  Under section 1192.7, subdivision (c)(31), assault with a deadly weapon qualifies as a serious felony under the Three Strikes law, but assault by means of force likely to produce great bodily injury does not. (*People v. Banuelos* (2005) 130 Cal.App.4th 601, 605 ["a conviction of assault by means likely to cause great bodily injury is not a serious felony unless it also involves the use of a deadly weapon or actually results in the personal infliction of great bodily injury"].)

In the instant case, the trial court drew reasonable inferences from Dominguez's record of conviction and determined his prior assault conviction qualified as a strike. The

abstract of judgment unambiguously describes Dominguez's assault conviction as "Assault w/deadly weapon." The description does not reference assault with force likely to produce great bodily injury, which is a non-strike offense. Thus, the description tracked "one, *but only one,* of the two specific, discrete, disjunctive, and easily encapsulated forms of aggravated assault set forth in section 245(a)(1)." (*Delgado, supra,* 43 Cal.4th at p. 1069, italics added.)

"Unless rebutted, [the abstract of judgment], standing alone, is sufficient evidence of the facts it recites about the nature and circumstances of the prior conviction." (*People v. Miles*, *supra*, 43 Cal.4th at pp. 1082-1083.) Here, Dominguez failed to produce any rebuttal evidence. He contends the certified California Law Enforcement Telecommunication System (CLETS) rap sheet printout is contradictory to the abstract of judgment because it describes his assault crime as "PC-FORCE/ADW NOT FIREARM: GBI LIKELY."

Insofar as the RAP sheet does not contain the exact description of the conviction as it is described in the abstract of judgment, we reject Dominguez's assertion that the RAP sheets created ambiguity with respect to the nature of his prior assault conviction. The trial court was entitled to rely upon the abstract of judgment. "[T]he abstract is a contemporaneous, statutorily sanctioned, officially prepared clerical record of the conviction and sentence … [w]hen prepared by the court clerk, at or near the time of judgment, as part of his or her official duty, it is cloaked with a presumption of regularity and reliability." (*Delgado, supra*, 43 Cal.4th at p. 1070.)

Although the RAP sheet was admissible and could be considered for limited purposes—such as for establishing the fact of Dominguez's prior assault conviction—it could not be considered for purposes of establishing the nature and circumstances of the conduct underlying the prior conviction. (See *People v. Martinez* (2000) 22 Cal.4th 106, 116 [CLETS rap sheets are "admissible to establish matters *other than* the nature and

22.

circumstances of the conduct underlying a prior conviction" italics added]; *People v. Dunlap* (1993) 18 Cal.App.4th 1468, 1471, 1476 [such documentation could be used for the limited purpose of establishing the *fact* of a conviction, but could not be used to establish the *substance* of the conviction].)

Dominguez further contends the trial court misinterpreted the abstract of judgment. He specifically contends the court stated that a stayed sentence had been imposed for the attempted robbery conviction to which the section 12022, subdivision (b)(1) enhancement was attached, when in reality, a consecutive sentence had been imposed for the attempted robbery conviction. The People assert the "stay" the court was referring to was the stay of sentence imposed upon Dominguez's conviction for assault with a deadly weapon. As the record supports the People's assertion, we need not address Dominguez's assertion further.

Finally, Dominguez observes that a deadly weapons enhancement (§ 12022, subd. (b)(1)) could not have lawfully been imposed upon a conviction for assault "if the conviction was for assault with a deadly weapon." It is not clear how Dominguez's argument assists him. As Dominguez acknowledges, the enhancement for use of a deadly and dangerous weapon (§ 12022, subd. (b)(1)) was attached to his conviction for attempted robbery, and not his conviction for assault. Because the trial court stayed the enhancement pursuant to section 654, this supports the inference that the enhancement was based upon the same course of conduct as the assault. (See *People v. Wynn* (2010) 184 Cal.App.4th 1210, 1221.) It does not support Dominguez's assertion that the assault was committed in a way that would likely render it a non-strike offense, i.e., by means likely to produce great bodily injury.

### DISPOSITION

The judgment of conviction is affirmed. The case is remanded back to the lower court for correction of the following issues:

- The trial court is instructed to clarify whether enhancement allegation Nos. 5 and 6, and allegation Nos. 11 and 12 are duplicate allegations, and if so, to amend the January 17, 2019 minute order to reflect which allegations were found true. The court must also amend the March 7, 2019 minute order as necessary.

- The trial court is instructed to address its order imposing fees on count 2, in light of the fact that these fees were originally waived. If the court determines these fees should be waived, consistent with its original order, the court is instructed to amend the March 7, 2019 minute order and the abstract of judgment to reflect this finding.


                                                             SMITH, J.

WE CONCUR:


POOCHIGIAN, Acting P.J.


MEEHAN, J.